In re: W. F. DAMRON

(No. 9918)

Submitted September 17, 1947. Decided December 16, 1947.

KENNA and LOVINS, JUDGES, dissenting.

*Lilly & Lilly, A. A. Lilly, R. G. Lilly* and *M. E. Boiarsky,* for petitioner.

*Houston A. Smith,* Prosecuting Attorney, and *J. E. Wilkinson,* for counsel in support of ruling of trial court.

HAYMOND, JUDGE:

Under Section 7, Article 2, Chapter 30, Code, 1931, the defendant, William F. Damron, a practicing attorney of the Logan County Bar, on April 1, 1946, by direction of the Judge of the Circuit Court of Lincoln County, was summoned to appear before that court on April 9, 1946, to answer five specific charges of malpractice and to show cause why his license as an attorney should not be sus-

pended or annulled. Upon the hearing, which began April 9, 1946, and ended April 16, 1946, the circuit court found the defendant guilty of all five charges and, by order entered April 16, 1946, annulled his license to practice law in the courts of this State and disbarred him from practicing in that court and the other courts in the State of West Virginia. To that order, upon the petition of the defendant, this writ of error was granted by this Court.

The charges of malpractice which the defendant was required to answer, as here summarized, were: (1) The defendant on January 12, 1946, as a notary public of Logan County, "took the acknowledgment" of his client, Pearl Crisp, to a bill of complaint to be filed in a divorce suit which the defendant, as her attorney, intended to institute in her behalf against her husband, Joe L. Crisp, in which she swore that she was a resident of Logan County, West Virginia. Later, on January 29, 1946, the defendant extracted from the bill of complaint, after it had been filed, its first page and inserted, in its place, without her knowledge and consent, a new page which falsely stated that she was a resident and actual bona fide citizen of Lincoln County, West Virginia, and was living and residing at Ferrellsburg, in that county; (2) on January 28, the defendant, with knowledge that the Circuit Court of Lincoln County was without jurisdiction to entertain a suit for divorce by Pearl Crisp against Joe L. Crisp, and with intent wilfully to perpetrate a fraud upon the court, instituted such suit in that court and filed, in the office of its clerk, the bill of complaint of the plaintiff; (3) on March 19, 1946, the defendant, as attorney for the plaintiff, Pearl Crisp, conspired with her and Louella Henderson to swear falsely before the judge of the circuit court in the trial of the suit for divorce and, with knowledge that their testimony was a deliberate falsehood, instructed them to testify that the plaintiff was a citizen and resident of Lincoln County, West Virginia, and had, for more than two years, resided with her uncle, Sam Mullens, at Ferrellsburg in that county; (4) on March 19, 1946, the defendant, knowing that Pearl

Crisp and Louella Henderson intended to swear falsely, presented them to the judge of the circuit court in the trial of the suit for divorce and, in answer to questions propounded by the defendant, as attorney, they did testify falsely; and (5) on March 19, 1946, because of the suspicious nature of the demeanor of Pearl Crisp, plaintiff in the suit for divorce, the judge of the circuit court continued the trial until March 27, 1946, directed the divorce commissioner to procure the attendance at that time of Sam Mullens and other residents of Ferrellsburg to testify in the suit, and ordered the defendant to be present for the completion of the trial on March 27, 1946, which order the defendant purposely, wilfully and intentionally disobeyed and instructed his client, Pearl Crisp, and her witness, Louella Henderson, to absent themselves from the trial on the day to which it was continued.

The circuit court designated two members of the bar of Lincoln County to prosecute the foregoing charges against the defendant in this proceeding. The defendant, in person and by his attorneys, appeared on April 9, 1946, the return day of the summons, and entered his oral denial of the charges. It is appropriate to remark at this point that at every stage of the trial of this proceeding the learned trial judge, whose duty under the statute was to order the defendant to be summoned to show cause why his license should not be suspended or annulled, conducted the hearing with the utmost fairness and impartiality and with due regard for the rights of the defendant. The evidence adduced at the hearing is voluminous and comprises more than five hundred pages of the printed record. Anything more than a general outline of the relevant testimony of the fifteen witnesses offered to sustain the charges and of the sixteen witnesses for the defense, including the defendant who testified at length in his behalf, and reference to the testimony relating to events and occurrences of primary importance, is unnecessary and would unduly extend the length of this opinion. Some material facts and circumstances are not

controverted. As to other material facts the evidence is conflicting. With respect to the alleged participation of the defendant in the false and fraudulent conduct of his client, Pearl Crisp, and her sister and principal witness, Louella Henderson, and with respect to his knowledge of the depravity and the immoral character of his client, the testimony is in sharp conflict.

Before discussing the relevant portions of the evidence, however, it is pertinent to consider the nature and the legal sufficiency of the several charges. The first four describe conduct which, if engaged in by an attorney, fully warrants his removal from the practice of the honorable profession of law. They specify deliberate acts of fraud and deception which amount to dishonesty and moral turpitude and render those who commit them unfit to practice law. An attorney may be disbarred and his license to practice annulled for misconduct which shows him to be an unfit or unsafe person to exercise the privileges of his profession and to represent other persons as an attorney, or which tends to discredit the legal profession or to degrade its standing before the public. 5 Am. Jur., Attorneys at Law, Section 261; *State* v. *McClaugherty*, 33 W. Va. 250, 10 S. E. 407. These charges, if sustained by adequate proof, are sufficient to support a judgment which annuls the license of a lawyer and disbars him from the practice of law. The fifth charge, however, does not designate conduct of the character alleged in the first four charges and that charge will be dealt with later in this opinion.

By his assignments of error, the defendant assails the judgment of the trial court on these grounds: (1) The evidence pertaining to the first charge exonerates the defendant of any wrongful conduct with relation to it; (2) the evidence in relation to the second, third and fourth charges preponderates in favor of the defendant; (3) neither the averments of the fifth charge nor the evidence with respect to it is sufficient to support a judgment which annuls the license of the defendant and disbars him from practicing his profession; and (4) refusal

of the trial court to admit evidence offered in behalf of the defendant to show that neither Pearl Crisp nor Louella Henderson had been prosecuted for giving false testimony under oath.

The vital question in this proceeding, upon which the decision must turn, is whether the evidence is sufficient to support the finding of the trial court that the defendant is guilty of the foregoing charges of malpractice and to justify the order which annulled his license to practice law and disbarred him from practicing in all the courts of this State.

Pearl Crisp, twenty six years of age at the time of the trial, is the wife of Joe L. Crisp, to whom she was married in Kentucky in 1935. At different times they lived together in Kentucky, North Carolina, and in Logan County in this State. On occasions they used the names of Gentry and Jenkins. After their separation which occurred about 1941, he left this State and she stayed at different places in Logan County. For a period of three years she lived with a man by the name of Brown in that county, represented herself to be his wife, and used his surname as her own. In 1942 she instituted a suit for divorce in Logan County against her then nonresident husband. A divorce was refused by the circuit court of that county in 1943 because of her illicit cohabitation with Brown. She knew of the defendant as a lawyer for about three years prior to the trial of this proceeding and in September, 1945, she called at his office and employed him as her attorney to institute the suit for divorce which led to the charges of malpractice against him. He had seen her about Logan for three or four years before the institution of this proceeding but did not know her personally until she visited his office in September, 1945. She made at least two later visits to his office before the suit was instituted in January, 1946. According to the defendant, she gave him the information necessary to enable him to prepare the bill of complaint in the divorce suit. This information the defendant put in the form of a written memorandum.

On October 16, 1945, before the bill of complaint was actually written, Pearl Crisp signed and swore to a verification of the contents of the bill before the defendant as a notary public. Sometime later the bill of complaint was typewritten by a stenographer, from the memorandum of the facts used by the defendant and given by him to the stenographer for use in the preparation of the bill of complaint. As originally written it was addressed to the Judge of the Circuit Court of Logan County and it contained the statement that Pearl Crisp, the plaintiff in the proposed suit, was a citizen and resident of that county. In that form, with the verification of October 16, 1945, attached, it was mailed by the defendant to the Clerk of the Circuit Court of Lincoln County on January 25, 1946. The clerk filed it in his office on January 28, 1946, and, having observed that it was addressed to the Judge of the Circuit Court of Logan County, on that day returned it by mail to the defendant for correction and in the accompanying letter called that fact to his attention. The defendant caused his stenographer to rewrite the first page of the original draft and, as rewritten, it addressed the bill to the Judge of the Circuit Court of Lincoln County and contained the statement that Pearl Crisp was a citizen and resident of Lincoln County, and had resided at Ferrellsburg in that county for more than two years. This new first page was then inserted in the verified bill of complaint in lieu of the original first page. Pearl Crisp was not present when this change was made. With this alteration the bill of complaint was again mailed by the defendant to the Clerk of the Circuit Court of Lincoln County with a letter in which the defendant explained that the reference in the original draft to the Judge of the Circuit Court of Logan County and the statement concerning the residence of the plaintiff were due to an oversight by him and a mistake upon the part of his new and inexperienced stenographer.

The suit having matured for hearing on March 19, 1946, the date fixed for the trial of the case and three other suits for divorce in which the defendant represented the plain-

tiffs as their counsel, he went to the court house of Lincoln County, where he met Pearl Crisp and her sister Louella Henderson. At that time Louella Henderson had not previously met or seen the defendant. Accompanied by them and the plaintiffs in the other suits and their witnesses the defendant went into a room of the court house and explained to all of them the character of the testimony to be given by the various parties and witnesses in each case.

Upon the hearing of the divorce case Pearl Crisp and Louella Henderson were sworn and testified. No other witnesses appeared in the case at that time. Both of them swore that Pearl Crisp had lived for about two years at Ferrellsburg in Lincoln County with her uncle. When asked by the court the name of her uncle Pearl Crisp hesitated and finally stated that his name was Pat Mullens. During the hearing the defendant in this proceeding told the court that one witness, Sam Mullens, the uncle of Pearl Crisp and with whom she had been making her home, was absent because of illness. He also said at the time that he could state under oath that she had not lived with her husband during that period.

At the conclusion of the testimony on March 19, 1946, the trial court continued the case for further hearing on March 27, 1946, and directed the issuance of a subpoena for Pat Mullens to appear and testify at that time. On March 27, 1946, the defendant and Pearl Crisp and Louella Henderson did not appear. No one by the name of Pat Mullens was found by the officer to whom the subpoena was directed but several persons named Mullens, who lived in or near Ferrellsburg, including a man named Samuel Mullens, appeared and testified. None of them knew anyone in that neighborhood by the name of Pat Mullens, and none of them knew or had ever seen anyone by the name of Pearl Crisp.

On March 28, 1946, Pearl Crisp and Louella Henderson in separate affidavits stated that their testimony relating to the residence of Pearl Crisp in Lincoln County at the

home of her uncle was false; that Pearl Crisp was a resident of Logan County and had never resided in Lincoln County; that she had no uncle named Pat Mullens; and that she had been induced by the defendant to swear falsely as to those matters to enable her to obtain a divorce in the Circuit Court of Lincoln County. For this misconduct Pearl Crisp was punished for contempt of court and sentenced to jail for ten days. While she was in jail, one of the prosecuting witnesses, Paris Smith, who according to the testimony of a defense witness was keeping company with Pearl Crisp about that time, contacted the defendant who undertook to assist him in his efforts to secure bail for her release and visited the jail and spoke to her on one occasion while she was imprisoned there. After Pearl Crisp and Louella Henderson made the foregoing affidavits this proceeding was instituted against the defendant on April 1, 1946.

As to the material facts with respect to the information given to the defendant by Pearl Crisp on her visits to his office concerning her residence, his knowledge of her residence in Logan County, and his alleged instructions to her to testify falsely that she was a resident of Lincoln County, the evidence is in sharp conflict. Pearl Crisp testified that she told the defendant when she consulted him at his office that she lived and resided in Logan County. This the defendant denies. His testimony is that she told him that she resided at Ferrellsburg in Lincoln County with her uncle, Sam Mullens. His testimony is corroborated in that respect by the testimony of his stenographer who was present at the time Pearl Crisp was in his office and informed him as to her residence. This stenographer, who left the employment of the defendant before the divorce suit was instituted, and her successor, also corroborated his testimony that bills of complaint in the divorce suits instituted by him were prepared by each of them at various times by the use of forms and by the insertion by them of the required facts which they obtained from written notes made by the defendant of the information given to him by the plaintiff in each par-

ticular case. They and the defendant also testified that the practice, followed by the defendant, of preparing a verification to be attached to the bill of complaint in a divorce suit and having the verification signed and sworn to by the plaintiff before the completion of the bill of complaint was followed by several lawyers in Logan County and in other nearby counties and had existed for a number of years. The stenographer who prepared the original typewritten draft of the bill of complaint for the Crisp case also testified that the incorporation in it of the part which was addressed to the Judge of the Circuit Court of Logan County and the part which stated that the plaintiff was a resident of that county was due to her mistake.

With respect to the knowledge of the defendant that Pearl Crisp was a resident of Logan County, her evidence is contradictory. In her testimony she says that she told the defendant that she had instituted a prior suit for divorce in Logan County. In her affidavit of March 28, 1946, she states that she did not so inform him. The defendant admits that he knew she worked at different places in Logan County, but he states that he did not know where she lived, or where to locate her at different times, or that she had been denied a divorce by the circuit court of that county, or that she was living illicitly with a man named Brown. She testified that she lived with a man of that name for three years at Man in Logan County, used his name and represented him as being her husband and herself as being his wife, and that she desired a divorce in order that she could marry him.

With reference to the charge that the defendant induced Pearl Crisp and her sister, Louella Henderson, to testify falsely that Pearl Crisp was a resident of Lincoln County, the substance of their testimony is that the defendant told them when they and the baby of Louella Henderson were alone with him in a room of the Lincoln County Court House on the morning of March 19, 1946, after the plaintiffs in the other cases and their witnesses had left the room, that they would have to testify that Pearl Crisp had an uncle named Sam Mullens at Ferrells-

burg and that she would have to have a residence there for two years before she could get her divorce. Two of the four other persons who were in the same room with Pearl Crisp and Louella Henderson and the defendant while he questioned each of them about the testimony they intended to give in the various divorce cases set for hearing on that day testified that they came out of the room before the defendant and the others left but that all who then remained in the room, including the defendant, later came out together. They did not hear Pearl Crisp tell the defendant that she resided at Ferrellsburg or that she had an uncle named Sam Mullens. The other two of the four persons in the room with Pearl Crisp and Louella Henderson and the defendant testified that Pearl Crisp in answer to questions by the defendant told him that she lived at Ferrellsburg with her uncle, Pat Mullens, and had done so "off and on" for two years. One of them also says that the defendant did not suggest the character of the testimony to any of the group and that Pearl Crisp and Louella Henderson left the room before she left. The other of these two witnesses states that neither Pearl Crisp nor her sister remained in the room with the defendant after the others had left. The defendant, in his testimony, denied that he suggested to, or requested or told, Pearl Crisp or Louella Henderson to say that Pearl Crisp lived at Ferrellsburg with an uncle by the name of Sam Mullens or Pat Mullens, or that she had lived there for two years. He also testified that all the persons who had been in the room with him came out of the room at about the same time. He asserts in his testimony that he relied at all times in good faith upon the information given him by Pearl Crisp in relation to her residence, and insists that she told him that her residence for more than two years was with her uncle at Ferrellsburg in Lincoln County. He testified that Pearl Crisp told him these facts on one of her later visits to his office, that he noted them on the memorandum which was used by his stenographer, and that the stenographer failed to incorporate them in her previous draft of the bill of complaint.

The disbarment of an attorney from practicing in the court which orders it and the manifestly more severe action of annulling his license to practice his profession in all courts, are fraught with grave disaster for him who experiences either misfortune. Each takes from him his customary means of earning a living for himself and his dependents. Each deprives him of a valuable professional right or privilege and destroys his professional standing. See *State v. Shumate,* 48 W. Va. 359, 37 S. E. 618. Each removes him from the sphere of conduct for which by training and experience he is best fitted and forces him to seek a different kind of activity in which he is inexperienced and for which ordinarily he is not properly qualified. Even in other types of work the stigma of his past unfitness remains and operates as a handicap in his efforts to succeed. Though it is the solemn and unqualified duty of the courts, for the protection of the legal profession and the public, and the maintenance of their own power and dignity, to remove from the profession an unfit member, they should discharge that duty only when it is clearly established that misconduct which justifies such drastic action has, in fact, occurred.

It appears from the evidence that the three principal witnesses who testified against the defendant in this proceeding are persons of unsavory character and low type of morality. Two of them, Pearl Crisp and her sister, Louella Henderson, freely admit that they have testified falsely under oath. Pearl Crisp contradicts herself as to a material fact by her sworn statement of March 28, 1946, and her testimony in this proceeding. By her own admissions she is a grossly immoral person. Her sister, the mother of a small baby, appears not to have been married, and both she and Pearl Crisp are friends and frequent companions of Paris Smith, the third of the trio of main witnesses. He is a former convict and, though married and not divorced, he does not support or live with his wife. Without the testimony of these witnesses none of the first four charges against the defendant can be sustained. Common experience teaches that falsifiers and profligates,

when frustrated in their designs, are quick to place on others the blame for the failure which results from their own misdeeds. From the evidence in this case it is not an unreasonable inference that Pearl Crisp may have adopted that policy in her attitude toward the defendant. That the defendant accepted her as his client and offered her and her sister as witnesses in the suit for divorce, though deserving reproach, do not restore their integrity or lend strength to the doubtful character of their testimony. The defendant and the witnesses who testified in his behalf contradict the material testimony of all of them.

This Court has held, in at least three common law proceedings, that the evidence of misconduct which justifies disbarment of an attorney must be full, preponderating and clear. *State* v. *Shumate,* 48 W. Va. 359, 37 S. E. 618; *State* v. *Stiles,* 48 W. Va. 425, 37 S. E. 620; *State* v. *Smith,* 84 W. Va. 59, 99 S. E. 332. This rule applies in this proceeding which is based upon the statute, 30-2-7, Code, 1931, and has for its purpose the suspension or the annulment of the license of an attorney to practice his profession in the courts of this State. The requirement as to the nature and the sufficiency of the evidence is identical in each type of proceeding whether it is based upon the statute or upon the common law. Here the evidence indicates indiscretions and indifference upon the part of the defendant, failure or refusal to recognize the moral shortcomings of his client, and disregard of ordinary care and caution in the preparation, the alteration and the filing of the bill of complaint. The acts and the omissions of the defendant arouse suspicion and call for judicial disapproval; but these shortcomings, established by the evidence, do not constitute misconduct of the character which shows him to be unworthy of public confidence or unfit to be entrusted with the privileges and the duties of the profession. Misconduct must be of that nature and must be established by full, preponderating and clear evidence to justify disbarment or the annulment of the license of an attorney to practice the profession of law. The evidence in this proceeding does not satisfy that essential

requirement. It does not overcome or set at rest the grave doubts which arise and remain with respect to the alleged guilt of the defendant or remove the serious probability of injustice which might result from the judgment of disbarment and annulment of his license to practice law.

The fifth charge against the defendant is that he wilfully disobeyed the order of the trial court which required him to appear in court with his client and her sister on March 27, 1946, the date to which the trial of the suit for divorce was continued. Though the allegations of this charge sufficiently state facts which amount to contempt of the trial court, they do not constitute misconduct for which the defendant may be disbarred or his license to practice may be annulled. As a general rule an attorney may not be disbarred for contempt of court unless his act or course of conduct amounts to base and aggravated contempt. 5 Am. Jur., Attorneys at Law, Section 264. A proceeding to punish for contempt is separate and distinct from either a common law proceeding to disbar an attorney from practicing in the particular court in which disbarment is sought or a proceeding under the statute to suspend or annul his license to practice. In *State* v. *McClaugherty,* 33 W. Va. 250, 10 S. E. 407, the rule to show cause was treated as a common law proceeding to disbar an attorney who was charged with contempt and professional misconduct in the same proceeding. The same act constituted and formed the basis of both charges. The trial court found the defendant guilty, fined him for contempt and revoked his privilege to practice in that court. In reversing the judgment of contempt and in affirming the revocation of the privilege of practicing in the trial court this Court recognized the separate character of the two charges. In that case, however, the conduct which formed the basis of the charge of contempt constituted misconduct which justified the judgment of disbarment. In *State* v. *Shumate,* 48 W. Va. 359, 37 S. E. 618, also a common law proceeding, discussing the difference between contempt and disbarment, this Court used this language: " 'The power to disbar an attorney proceeds

upon a very different ground from the power to punish for contempt'. Weeks on Attorneys, 141. Another reason is that contempts are for wrongs against the court, whereas disbarment may be for acts done in court as attorney or for wrongs or crimes done out of court." As the allegations in the fifth charge are not sufficient to justify the annulment of the license of the defendant, it is unnecessary to discuss or consider the evidence offered to support that charge.

There is no merit in the contention of the defendant that the evidence, offered in behalf of the defendant, to show that neither Pearl Crisp nor Louella Henderson had been prosecuted for the admittedly false testimony under oath which each of them gave upon the trial of the divorce suit, should have been admitted. This evidence was not relevant to any issue presented by any of the written charges of misconduct against the defendant. For that reason its rejection was proper.

The conduct of the defendant, as attorney and as notary public, in swearing Pearl Crisp to the form of verification before the bill of complaint was completed and its actual contents were known to her, and in using it later to verify that pleading when it was finally completed, and the practice of using such verification forms in that manner, are expressly condemned as improper and as dangerous alike to the attorney and his client. That practice ignores and is contrary to the actual existing factual situation and creates the opportunity for disagreements and disputes as it did in the Crisp divorce case. Though such action may not justify the disbarment of an attorney in every instance, as it does not in this proceeding because of the practice which was not considered to be improper and which had existed for a considerable time among some reputable lawyers in the general section in which the defendant practiced at the time, it may easily lead to consequences which justify disbarment or the annulment of the license of an attorney who indulges in such practice. That course of conduct is emphatically disap-

proved and it should not be followed in any instance by any reputable practitioner.

Because the malpractice of the defendant, as alleged in the four sufficient charges, is not established by the requisite of full, clear and preponderating evidence, the judgment of the Circuit Court of Lincoln County is reversed and this proceeding is remanded to that court with directions that it be dismissed.

> *Reversed and remanded*
> *with directions.*

KENNA, JUDGE, dissenting:

Of course I agree with what is said in the opinion of the majority as to the high moral duty of an attorney at law. I think, however, that it is not correct to speak of disbarment as depriving a lawyer of a "valuable professional right", because practicing law is no man's property right. (See *Ex Parte Wall*, 107 U. S. 265, 27 L. ed. 552, quoted with approval in *State* v. *Shumate*, 48 W. Va. 359, 361, 37 S. E. 618.) That, in my opinion, is a high privilege conferred only upon those that are thought at the time to deserve it. An attorney is an officer of the court in which he practices and as such his conduct should be beyond reproach. In this jurisdiction under Code, 30-2-1, in order to obtain a license to practice law a person must first appear before the circuit court of the county in which he resides and has resided for the next preceding year and prove to the satisfaction of the court, or to the satisfaction of a committee of three members of the bar appointed by the court for that purpose, among other things, that he is a person of good moral character. There is no *de jure* right to a license to practice law in this State. See *In Re Application for License to Practice Law*, 67 W. Va. 213, 233, 67 S. E. 597, by a divided Court.

It may be conceded that in order to sustain an order revoking the license of an attorney at law, the proof must

be full, preponderating, and clear. The statement of the majority that the principal charge against Mr. Damron has not been so proven ignores completely the fact that that charge is proven by uncontradicted evidence in writing. To my mind, the majority is simply accepting Mr. Damron's lame excuses for admittedly reprehensible conduct.

The substance of the main charge is that Mr. Damron, acting as a notary public, certified the signed affidavit of his client, Pearl Crisp, and used the same affidavit, first, in order to verify a bill of complaint alleging that she was a resident of Logan County and, second, in order to verify a bill of complaint alleging that she was a resident of Lincoln County. Both bills were signed by Mr. Damron as counsel and both were obviously intended to be filed. As I said, these facts stand undisputed in this record. With all deference, there is no proof in this record that that practice (using the same affidavit to verify two pleadings with irreconcilable allegations) as stated in the majority opinion, "was not considered to be improper and which had existed for a considerable time among some reputable lawyers in the general section in which the defendant practiced at the time * * *".

In order to formally comply with Code, 48-2-11, which provides that process shall not issue in divorce proceedings except upon the filing of a verified bill of complaint, Pearl Crisp went to Mr. Damron's office in the City of Logan and there signed an affidavit before him as notary public for the purpose of verifying a bill of complaint which had not then been prepared. The bill of complaint was later prepared, the affidavit attached, and on January 25, 1946, sent by mail by Mr. Damron to the Circuit Clerk of Lincoln County. Mr. Damron's letter appears at page 542 of the printed record. On January 28, 1946, the clerk returned the bill of complaint to Mr. Damron by mail, calling his attention to the fact that it was addressed to the Honorable C. C. Chambers, Judge of the Circuit Court of Logan County and alleged the residence of the complainant to be in that county. The letter referred to

appears on page 543 of the printed record. On January 29, 1946, (by mistake, dated 1945) Mr. Damron caused the first page to be substituted with another so that it was addressed to the Circuit Court of Lincoln County instead of Logan and alleged the plaintiff's residence as being in Lincoln County. He then mailed it to the Circuit Clerk of Lincoln County. Mr. Damron's letter appears at page 544 of the printed record and the bill of complaint with the affidavit attached appears at page 546 of that record. Mr. Damron nowhere questions the actuality of these occurrences and nowhere is it contended that they were justified by custom.

Furthermore, Mr. Damron had his client make oath to the allegations of a bill of complaint that had not, at the time, been prepared, and later attached her affidavit to a bill of complaint containing a false allegation of his client's residence. His present contention, as should be expected, is that this occurred by reason of a clerical mistake in his office. He fails to explain why he gave the bill of complaint his personal indorsement by signing it as counsel. That was done in addition to his acting as notary public in the verification. Upon arrival of the bill of complaint on its return to him by the Circuit Clerk of Lincoln County, Mr. Damron's stenographer rewrote, at his express direction, the first page and substituted the rewritten page for the original first page of the bill of complaint. It was then addressed to the Circuit Court of Lincoln County and the averments of residence were changed to fit Lincoln County. Neither the affidavit nor the certification was altered nor was Pearl Crisp again consulted. The majority opinion states that this record shows an established local custom of executing affidavits under Code, 48-2-11, to verify the allegations of unprepared or imaginary bills of complaint. This statement I question. Mr. Damron's former stenographer testified that that was the custom of her present employer in the City of Logan. Her employer took the stand to deny that statement, saying that in only one instance, which was an emergency created by the brutality of the husband, did

he recollect resorting to that practice. Then Mr. Damron's former stenographer took the affidavit in the absence of her employer and upon his return, his client having then left the City of Logan, he drafted the bill of complaint and to it attached the verification. An attorney from Cabell County testified that that was his customary practice. That is all. With the plethora of divorce proceedings, that is hardly the proof of a custom at any location.

Mr. Damron is in the unenviable position of having used the same affidavit to verify two bills of complaint, one of which is bound to have contained a false allegation on a matter fundamental in a divorce proceeding, i. e., residence. Both of those bills of complaint he signed as counsel. He is in the further unenviable position of having acted as notary public in taking an affidavit verifying the allegations of a nonexistent paper. These facts he cannot and does not dispute. Their truth or falsity does not rest upon the testimony "of persons of unsavory character and low type of morality."

As to the charge of subornation of perjury committed before the Circuit Court of Lincoln County on March 19, 1946, and as to Mr. Damron's disobedience to the order of the judge of that court to appear for further hearing on March 27, 1946, I can say only that their flavor corresponds with that of the admitted conduct of Mr. Damron and as a finding of fact by the Circuit Judge of Lincoln County it is my opinion that Mr. Damron is not entitled to greater credence than are the witnesses who testified against him.

I regard this case, the interest in which is peculiar to members of the bar, as being not a necessary place for a homily concerning the nature of the law as a profession nor the keen sensibility to good sportsmanship, integrity, and honor that is properly expected from every individual member of the bar. That they should, and as a class do, realize. Nor do I wish to speak regarding the very solemn duty of the judiciary in the rare instances where performance of the high duty of a lawyer is seriously questioned

to see that the standards of the bar are upheld. As here, that is far from a pleasant duty to perform. Of all this I am certain the members of the bar do not need to be informed.

Perceiving no error in the finding of fact by the Judge of the Circuit Court of Lincoln County, I would affirm the order of annulment entered by that court.

Judge Lovins authorizes me to say that he concurs in this memorandum.