Martin F. Fahey

*v.*

J. H. Brennan, *Judge* of the Circuit
Court of Hancock County, West Virginia

(No. 10412)

*and*

William T. Fahey

*v.*

J. H. Brennan, *Judge* of the Circuit
Court of Hancock County, West Virginia

(No. 10413)

Submitted September 6, 1951. Decided December 11, 1951.

Given and Riley, Judges, dissenting.

*Wm. Bruce Hoff,* for petitioners.

*Charles M. Love, Tom B. Foulk, A. E. Bryant,* for defendant.

Fox, PRESIDENT:

These cases arise upon rules in prohibition awarded petitioners, William T. Fahey and Martin F. Fahey, against the Honorable J. H. Brennan, Judge of the Circuit Court of Hancock County, to show cause why that judge should not be prohibited from further proceeding in matters relating to the suspension or annulment of petitioners' licenses to practice law. Due to the identity of the issues involved in the two cases, they are consolidated for the purposes of this opinion.

Each petition recites that petitioner is a resident of the State, is a licensed attorney at law, with law offices located in Weirton, Hancock County, and that petitioner is a member in good standing of The West Virginia State Bar, as well as other legal associations and fraternities. It is also alleged by petitioners that on August 9, 1951, they were served with identical summonses to appear before the Circuit Court of Hancock County, on August 16, 1951, to show cause why their licenses as attorneys at law should not be suspended or annulled, for reasons set forth in charges, thirteen in number, filed against them. The summonses recited that copies of the charges were attached to and made part of the summonses. The charges were not actually attached to the summonses, but were served upon petitioners at the time of the serving of the summonses, and were duly filed in the proceeding. On the same day, August 9, 1951, the circuit court had entered orders requiring the Faheys to be summoned in accordance with Code, 30-2-7, and Section 25 of Article VI of the By-Laws of The West Virginia State Bar. The rules issued by the circuit court, in the paragraph preceding the charges laid against the Faheys, recite, "* * * which malpractice has come to the personal observation of the undersigned Judge * * *."

The charges as set forth are lengthy but in brief are that the petitioners: (1) accepted employment to defend a client charged with manslaughter, knowing that the client was intoxicated at the time of the motor vehicle accident causing the homicide; (2) conducted defense of

client after he was indicted on charges of voluntary manslaughter, driving while intoxicated and under influence of intoxicating liquors; (3) adduced perjured testimony knowing it to be false, at the trial of manslaughter case; (4) associated themselves with other attorneys for the purposes of defending persons charged with false swearing at the trial; (5) filed petitions in mandamus in the Supreme Court of Appeals to compel the circuit court and prosecuting attorney of Hancock County to name a practicing associate of Faheys to be the "John Doe" named in an indictment returned in Hancock County, charging obstruction of justice; (6), (7) and (8) adduced perjured testimony at the trial of persons charged with false swearing; (9) continued the prosecution of the mandamus proceedings in the Supreme Court of Appeals after the prosecuting attorney had named associate of Fahey as "John Doe"; (10) continued to assist defense counsel in criminal action against one of the persons charged with false swearing, after one of petitioners had been permitted by circuit court to withdraw as one of counsel; (11) participated in moving for continuance of certain false swearing trials; (12) instigated and procured indictments against the prosecuting attorney of Hancock County, in order to intimidate him in false swearing trials, and to obstruct administration of justice; (13) failed to inform circuit court of petitions signed and filed by petitioners before Supreme Court of Appeals, praying appellate relief from judgments of the Circuit Court of Hancock County.

We are of the opinion that of the several charges contained in the Rules issued against petitioners, only those relating to the action of petitioners in adducing known false testimony should be considered. For convenience these several charges may hereafter be referred to as the false swearing charges. Other charges set out in the Rules may constitute grounds for disciplinary action, but not for annulment of licenses.

Petitioners allege that, except for what appears by way of recital only, no charges have been made or filed against them in the circuit court, nor does the proceeding con-

form to the requirements of Code, 30-2-7, or By-Laws of The West Virginia State Bar, Article VI, Section 25. It is further alleged that it does not appear in sufficient manner that the alleged acts of malpractice were observed by defendant as contemplated by the statute, and the provision of the State Bar By-Laws, above referred to. The cumulative effect of these allegations, as so charged by the petitioners, is that except where malpractice is personally observed by the court, the judge of that court is in no better position than any other complainant, and is required by the statute and the State Bar By-Laws to file a verified complaint, which requirement, petitioners contend, is jurisdictional, and furnishes the exclusive procedure for suspending or disbarring petitioners from the practice of law.

Petitioners further allege that defendant entertains strong hatred and prejudice against them, and that defendant is disqualified to serve as Judge of the Circuit Court of Hancock County in the proceedings because he has prejudged every issue in advance of hearing; because he is a party to the proceedings within the meaning of Code, 51-2-8; and because he is a material witness in the proceedings.

The defendant interposed his demurrer to the petition, upon the ground: "That it fails to state a cause of action, the jurisdiction of the Circuit Court of Hancock County, West Virginia, affirmatively appearing on the face of said petition." No answer was filed by defendant. It is upon this state of the pleadings that this Court must render judgment.

The controlling questions relate to the jurisdiction of the Circuit Court of Hancock County in the proceedings instituted therein for the purpose of determining whether the respective licenses to practice law of the petitioners should be suspended or annulled because of the alleged malpractice. The procedure for disciplining, suspending and disbarring attorneys at law is now contained in Article VI, By-Laws of The West Virginia State Bar, approved and promulgated by the Supreme Court of Ap-

peals April 10, 1951. There is created by that article "The Committee on Legal Ethics of The West Virginia State Bar", and the committee is given "jurisdiction of all matters respecting legal ethics, unprofessional conduct, malpractice and, in the most general sense, the professional standards of the Bench and Bar of West Virginia, whether arising before or after the promulgation of these rules." It also provides, in the same article, that "Such committee shall, on its own motion, or upon the request of the Board or the President, or upon the request of any court of record or judge thereof, or upon the verified complaint of any person, as to any matter within its jurisdiction, make investigations, dismiss complaints and requests, administer reprimands, issue charges, hold hearings, institute proceedings, and do all such other acts as are authorized in this Article." The committee is empowered to summons witnesses, administer oaths, examine witnesses and compel the production of any and all books, papers, letters and other documents necessary or material to the inquiry. It may hold formal hearings but is not required to do so. Section 14 of the same article prescribes a procedure, if the hearing is formal, in this language: "At least ten days prior to any such formal hearing, a notice of the time and place of the hearing, containing a plain statement of the charges against him, shall be served upon any accused person in person or by registered mail at his last known address. Such hearing shall be held in the county in which he resides, or in which he has his principal office, or in which the alleged offense, or any part thereof, was committed, as the committee may determine. The rules of evidence applicable in equity cases shall govern at such hearings. Evidence may be taken by deposition according to the procedure in equity cases. An accurate record shall be made of the proceedings at such formal hearings, unless waived in writing by the accused person." If the committee, after the investigation and hearing, is of the opinion "that a charge of annulment or suspension of license is merited", it may "file in the circuit court of the county in which the accused person resides * * * a verified complaint * * * with a

recommendation." In the event such a petition is filed, the procedure to be followed thereafter is set out in Section 20 of Article VI, which reads: "Upon the filing of such complaint, report and recommendation, such court shall issue an order to the accused to show cause why said recommendation should not be put into effect by a court order. Such order shall be returnable not more than ten days from the date of its entry. Upon failure of the accused to appear and deny the charges, the court shall forthwith examine the papers filed and shall suspend or annul the license of the accused attorney as in its judgment shall seem right. If the accused shall appear and deny the charges, the matter shall be forthwith considered by the court on the record of the papers filed, unless good cause be shown for further hearing, in which event a day certain, not more than twenty days after the return day of the order to show cause, shall be set for such hearing. If the accused be found guilty by the court, on the record or on such further hearing, the court shall suspend or annul his license, or shall administer a public reprimand, which shall be made a matter of record in said court, as in its judgment shall seem right. All such matters shall be heard and determined by the court without a jury. The court shall give due weight to the recommendation of the committee."

In addition to the procedure for the suspension or annulment of the licenses of any attorney described above, Section 25 of the same article provides as follows: "If any court observe any malpractice therein by any attorney, or if a verified complaint be made to any court of malpractice by any attorney therein, such court shall order the attorney to be summoned to show cause why his license shall not be suspended or annulled. A summons shall thereupon be issued by the clerk of such court containing a copy of the charges and requiring the attorney to appear and answer the same on a day to be named therein, not more than twenty days from the date of issuance. Such summons may be served in the same manner as a summons commencing an action may be served, and

the service shall be made at least five days before the return day thereof. Upon the return of the summons executed, if the attorney appear and deny the charge of malpractice, the court shall, without a jury, try the same. If the attorney be found guilty by the court, or if he fail. to appear and deny the charge, the court may either suspend or annul the license of such attorney as in its judgment shall seem right."

Thus far we have dealt with the powers conferred upon. circuit courts in the suspension or annulment of licenses to practice law upon the provisions of the By-Laws of the West Virginia State Bar. Those provisions are of recent origin, and are based upon a statute which has been. in existence in this State and in Virginia for more than one hundred years. It is now contained in Code, 30-2-7,. reading as follows:

"If the supreme court of appeals or any court of record. of this State, except the county court, observe any malpractice therein by any attorney, or if complaint, verified. by affidavit, be made to any such court of malpractice by any attorney therein, such court shall order the attorney to be summoned to show cause why his license shall not. be suspended or annulled. A summons shall thereupon be issued by the clerk of such court containing a copy of the charges and requiring the attorney to appear and. answer the same on a day to be named therein, which summons may be served in the same manner as a summons commencing an action may be served, and the service shall be made at least five days before the return day thereof. Upon the return of the summons executed, if the attorney appear and deny the charge of malpractice, the court shall, without a jury, try the same. If the attorney be found guilty by the court, or if he fail to appear and deny the charge, the court may either suspend or annul the license of such attorney as in its judgment shall seem right." The section goes on to provide that an appeal. shall lie from any court of record of limited jurisdiction to the circuit court of the county, and from any circuit court to the Supreme Court of Appeals.

Substantially, the provisions of this statute were contained in Chapter 164 of the Code of Virginia of 1849, the Code of Virginia of 1860, and the West Virginia Code of 1868, and have been retained as a part of the law of this State to this day. The fact of its close similarity to the provisions of Section 25 of Article VI of the By-Laws of the West Virginia State Bar does not lessen the force of this statute. It is quite obvious that the circuit court, in filing the charges in this case, acted under both Section 25 and the statutory provisions quoted above. We stress the statute as having superior force because of the fact of its long existence, and as representing the settled policy of the State to grant to circuit courts power to suspend or annul the licenses of attorneys at law. If this were a new procedure, and if it were a procedure which had not been used and followed throughout the history of the State, the latest example being *In Re Damron,* 131 W. Va. 66, 45 S. E. 2d 71, we might be less inclined to rigidly apply the statute to the present proceeding.

The principal contention of petitioners is that the false swearing charges were of such nature that they could not have been "observed" by the court and, therefore, jurisdiction to hear the charges is vested exclusively in The Committee on Legal Ethics of The West Virginia State Bar. Defendant contends that the false testimony alleged to have been introduced to the court was presented upon trials had in the court over which he presided, therefore observed by him, within the meaning of Section 25 quoted above.

In the notices served upon petitioners, which set out the charges of false swearing, defendant states that the "malpractice has come to the personal observation of the undersigned Judge of the Circuit Court of Hancock County". One of the charges relating to the introduction of known false testimony charges that petitioners "wilfully and with intent to deceive the court * * *, had sworn and placed upon the witness stand and examined said Hurst, Mary Ellen Bradley, Virginia Grace Sponaugle, Roy Morgan and Cuba Hogeland for the purpose of having them

wilfully testify falsely * * * all of which was done by you knowingly, wilfully and with intent to deceive the jury and to obstruct the administration of justice in this court; and said Hurst, upon said indictment, was found not guilty." The several other charges relating to introduction of false testimony are to the same effect.

We are of the opinion that sufficient facts are alleged to show that the malpractice charged against petitioners was "observed by the court", within the meaning of Section 25. The witnesses alleged to have given false testimony were in court and testified in the trial then presided over by defendant. Petitioners were also in court, participating in the trial of the case then being held. Their actions during the trial were or could have been under the observation of the court. Their actions and their arguments or statements at and during the trial may have informed defendant that the proffered testimony was false and that petitioners knew that it was false when proffered. The procedure provided in Section 25 is very similar, if not exactly the same, as that set out in Code, 30-2-7, and the procedure followed in the instant case is practically the same as that followed in *In Re W. F. Damron,* 131 W. Va. 66, 45 S. E. 2d 741, though the question of jurisdiction of the court was not raised or decided. See *In Re Daugherty,* 103 W. Va. 7, 136 S. E. 402.

Petitioners also contend that "the rules issued by the defendant on August 8, 1951, are in excess of the jurisdiction of the court and of said defendant and the charge of the court because they contemplate only the suspension or annulment of petitioners' licenses rather than the striking of petitioners' names from the roll of lawyers practicing before that particular court." We think there is no merit in the contention. A reading of Section 25 shows that the "court shall order the attorney to be summoned to show cause why his license shall not be suspended or annulled", and that, if found guilty, "the court may either suspend or annul the license of such attorney as in its judgment shall seem right".

Petitioners further contend that the Circuit Court of Hancock County could only obtain jurisdiction of such a proceeding upon the filing of a verified complaint. No such complaint was filed in the proceedings instituted against petitioners. As above indicated, different procedures are provided for by the rules relating to the disciplining, suspending or disbarring of attorneys, and we find no provision in Section 25 requiring that a complaint be verified where the proceeding is initiated by a judge of a court. See *In Re Marcum,* 135 W. Va. 126, 62 S. E. 2d 705.

This proceeding calls for application of the following:

"Prohibition does not issue as a matter of right in cases where it does not clearly appear that a petitioner is entitled to that remedy, and before such petitioner is entitled to that remedy there must be a clear showing that a trial court has no jurisdiction to hear and determine the case or has exceeded its legitimate powers. *Fisher* v. *Bouchelle,* 134 W. Va. 333, 61 S. E. 2d 305, 306; *State* v. *O'Brien,* 100 W. Va. 163, 130 S. E. 111." *Sidney C. Smith Corporation, et al.* v. *A. Jerome Dailey, Judge, et al.,* 136 W. Va. 380, 67 S. E. 2d 523, decided November 20, 1951. We are unwilling to hold that a circuit court is without jurisdiction to suspend or annul the license of an attorney, in view of the plain and unambiguous lawful provisions of a Rule promulgated by this Court, and similar provisions of a legislative enactment.

Although the question of the issuance of a license to practice law was involved in the cases of *In re Application for License to Practice Law,* 67 W. Va. 213, 67 S. E. 597, and *In Re Eary,* 134 W. Va. 204, 58 S. E. 2d 647, those cases are informative on the power of a court to exercise the power to annul such license.

Petitioners further contend that defendant is a party to the proceedings instituted against petitioners, is interested in the result thereof, and is a material witness therein, within the meaning of Code, 51-2-8, and, therefore, can not take cognizance of the proceedings. The

applicable parts of that section read: "* * * When such judge is a party to a suit, or is interested in the result thereof * * * or if he is a material witness for either party, he shall not take cognizance thereof unless all parties to the suit consent * * *." There are also further allegations in the petitions in the instant proceedings that "defendant entertains not only a strong prejudice against him and a feeling towards him of completely uncompromising hatred", and that defendant has "prejudged every decisive question on the basis of surmise, speculation, conjecture and advice in advance of any trial or hearing." These are grave charges, striking, as they do, at the very foundation of the principle that every man is entitled to be tried before an unprejudiced tribunal; but they do not affect the jurisdiction of the court and, as must be admitted, jurisdiction is the only question we can deal with in the proceeding now before us. We will not assume that any person holding the high position of judge of any circuit court in West Virginia will sit in a case where he has prejudged the case in advance of hearing, but if any substantial question arises as to the disqualification of the presiding judge, a respect for the proprieties should impel such judge, though having jurisdiction and power to hear and determine this proceeding, to call upon another circuit judge to preside. Petitioners are not precluded, by anything appearing herein, from developing any fact or facts showing such disqualification upon hearing, and the matter is one that can be considered in its very broadest aspects under the provisions of the statute which provide an appeal to this Court from any action which the circuit court may take.

The sound public policy that makes it the duty of this Court to jealously guard its powers and prerogatives, admonishes us against any infringement of the powers and prerogatives of courts subject to the appellate power of this Court, such as circuit courts and other courts of record. We are not justified, we think, in ignoring the plain provisions of the statute which has been in existence for more than one hundred years, and the provisions of the

By-Laws of The West Virginia State Bar which have been approved by this Court under its rule making power, which have the force of law, and which have had the recent attention of the Legislature of the State, by depriving circuit courts of the powers and authorities plainly given them by such statute and Rules. The statute and Rules, as they exist, may afford opportunity for abuse, but we can not ignore statutes merely because they may be misused. In such cases we must resort to the provisions for review which, happily, in this case are specifically provided for. We can not grant the writs prayed for herein without ignoring a plain statutory provision and Rules solemnly adopted by this Court, and such action we are unwilling to take.

In view of the foregoing, the Rules heretofore awarded are discharged, and the writs of prohibition prayed for are denied.

*Writs denied.*

GIVEN, JUDGE, dissenting:

It is not doubted that Section 25 of Article VI of The West Virginia State Bar By-Laws vests in courts of record jurisdiction to hear and determine malpractice charges against attorneys at law in cases coming within the requirements of that section. I do not believe it will be questioned that such jurisdiction is limited to cases coming within the requirements of that section.

The petitions in the two instant proceedings allege that "The defendant has not observed, and has had no opportunity to observe, any such acts of malpractice on the part of the petitioner as are mentioned in *'the charges'* nor any circumstances rendering the observed acts of the petitioner improper acts." This, I think, goes to the jurisdiction of the court, since the court can, on its own motion, cause such a proceeding to be commenced only where the malpractice was "observed" in "court". If this be true, it deprives the Circuit Court of Hancock County of the power to proceed in the cases against petitioners. The only jurisdiction of the circuit court to entertain a

proceeding to annul the license of an attorney, as distinguished from the right to strike the name of the attorney from the rolls of the particular court, must rest upon statutory authority. In the proceedings against petitioners the statutory authority rests upon Section 25 of Article VI of the By-Laws. *In Re Daugherty,* 103 W. Va. 7, 136 S. E. 402.

We must look to that section alone for such authority. We find therein certain absolute requisites as to such authority. The malpractice must have been "observed". It must have been "observed" by the "court", not by a judge of some court; and the observation of such malpractice must have been, with reference to the court, "therein". If any one of the necessary requirements is absent, the court can obtain jurisdiction of such a proceeding only upon the filing of a "verified complaint" by The Committee on Legal Ethics of The West Virginia State Bar, pursuant to Section 19 of Article VI of the By-Laws, or by the filing of a "verified complaint" by an attorney pursuant to Section 25 of that article. It is not contended that any verified complaint has been filed in either of the proceedings against petitioners.

The only allegation contained in the notices of the charges against petitioners with reference to the observation of the malpractice is "* * *, which malpractice has come to the personal observation of the undersigned Judge of the Circuit Court of Hancock County." I think it very significant that the allegation is that the malpractice was the "personal observation" of the judge, and not that it was "observed" by the "court". The judge of a court is not the court. See *Johnston* v. *Hunter,* 50 W. Va. 52, 40 S. E. 448. It is also significant that the observation is not alleged to have been in the court. It could have been "observed" by the judge outside of the court. A judge may observe things miles from the court, and "personal observations" of a judge are not observations of a court. Little semblance, if any, exists between the facts stated in the notices and the jurisdictional facts upon which jurisdiction of the circuit court

must rest. Clearly the charges in these notices were insufficient to bring the cases within the requirements of Section 25.

The allegations contained in the petitions in the instant proceedings, quoted above, are not denied, there being only demurrers to the petitions filed by defendant. Are we not bound by the often applied rule to the effect that all matters properly pleaded, together with reasonable inferences to be drawn therefrom, are to be considered as true? I would obediently apply the rule in the instant proceedings, notwithstanding the defendant happens to be a highly honored judge of a circuit court. Important principles and valuable rights involved, I believe, require its application. No doubt the defendant desires it so. His action in initiating the proceedings could have been only because of a high sense of duty believed to have been required of him by Section 25.

One of the purposes of Section 25 was to relieve judges of courts of record of the burdensome and always unpleasant duty of policing their own bars, not to deny jurisdiction in such cases. Another purpose was to prevent unwarranted or premature publicity as to accusations made against attorneys at law before any investigation of charges, it being known that a mere accusation against an attorney at law, as to unprofessional conduct, though unfounded or false, greatly injures, and sometimes destroys, his practice of the profession, and his usefulness to the courts and to the public. These evil effects will be largely, if not entirely, avoided if the court accuses only upon matters "observed" in the "court", and an attorney accuses only upon a verified complaint; and The Committee accuses only upon a verified complaint after a full investigation and hearing. It is undoubted that those who drafted and promulgated the Constitution and By-Laws of The West Virginia State Bar intended that charges of malpractice against an attorney should be investigated and reported by a proper committee, except those cases falling within a certain classification. This position is more adequately stated

in the opinion in *In Re Herron,* 212 Calif. 196, 298 P. 474, as follows: "In short, the act clearly contemplates an investigation and a finding or conclusion as to whether or not it is advisable to institute proceedings against a member and cause a hearing to be held. It is to be noted that in these 'investigations' the officers are clothed with the power to compel the attendance of witnesses and production of books, papers, and documents pertaining to the matter under inquiry. All this investigation takes place before a proceeding is formally instituted or a 'hearing' had. This procedure completely and adequately occupied the same field held by the verified accusations under the system provided for in the Code sections. It is an effort to take an advanced step over and to improve upon the system provided for in the Code. In fact, the preliminary investigation is an inquiry by officers of this court selected for the purpose of ascertaining the probable truth of the charge made. Such an investigation doubtless does and it should allow an opportunity for the accused to be heard before a proceeding is begun. With competent officers, acting conscientiously and impartially, who can say that this system is inferior to or less just than that provided in the Code? What innocent man would not prefer this method of handling a complaint to a public proceeding against him resting alone upon the affidavit of a partisan, if not a prejudiced, client? There is nothing in this proceeding which in any way weakens our firm belief that the board of governors and committees functioning under it are all competent, patriotic, and unselfish members of the profession, acting for its best interests, it is true, but also in full sympathy with all rights and privileges of the members as attorneys at law."

The Constitution and By-Laws of The West Virginia State Bar are of statutory dignity. They supersede prior statutory provisions in conflict therewith. The State Bar By-Laws now provide several methods for trying malpractice charges against attorneys at law, not provided by prior statutes. The changes were brought about in an attempt to improve that procedure, in "an effort to

take an advanced step over and to improve upon the system provided for in the Code." This Court should not destroy the hoped for improvements by holding that the jurisdiction of courts of record is the same under the new provision of law, the State Bar Constitution and By-Laws, as under ancient statutes.

Other allegations in the pleadings in the instant proceedings relating to lack of jurisdiction of the circuit court being admitted to be true by demurrers, are also, in my opinion, sufficient to establish lack of jurisdiction. I deem it unnecessary, however, to detail such other matters in this note.

Being of the views indicated, I respectfully dissent. I am authorized to say that Judge Riley joins in this dissent.