# CHARLESTON.

## STATE v. STILES.

### Decided December 8, 1900.

1. JUDGMENT DISBARRING—*Writ of Error.*
   Where a judgment is rendered by a circuit court disbarring one of the attorneys practicing before it for alleged malpractice in disregarding a stipulation with opposing counsel as to the continuance of a case, this Court has jurisdiction by writ of error to such judgment. (p. 428).

2. EVIDENCE—*Supporting Charges.*
   The evidence in such proceeding to disbar an attorney must support the charges, and be clear and preponderating. (p. 429).

3. POWER TO DISBAR—*Judicial Discretion.*
   The power to disbar an attorney is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility, but in doing so the court should exercise a sound and just judicial discretion. (p. 429).

Error to Circuit Court, Wyoming County.

Application for the disbarment of Maynard F. Stiles. From a judgment of disbarment, Stiles brings error.

*Reversed.*

E. L. BUTTRICK, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN., L. C. ANDERSON, and C. W. CAMPBELL, for the State.

ENGLISH, JUDGE:

A suit was pending in the circuit court of Wyoming County in the name of the State of West Virginia against Henry C. King and others for the purpose of selling five hundred thousand acres of land patented to Robert Morris by the Commonwealth of Virginia in June, 1795, for the benefit of the school fund. King presented a petition in said case offering to pay the taxes that might be due thereon, and praying that he might redeem the same from forfeiture, and was represented by Maynard F. Stiles as one of his counsel.

Alexander McClintock also filed a petition in said case claiming to be the owner of one hundred and forty-two thousand acres

known as the "DeWitt Clinton tract" patented by the Commonwealth of Virginia on the 19th of February, 1796, claimed in said petition to overlap the Morris grant, denying King's ownership of said five hundred thousand acre grant, and denying his right to redeem, in which petition he was represented by John A. Sheppard and others as his counsel.

During the pendency of the suit King brought an action of ejectment against McClintock and others to recover said five hundred thousand acre grant, and on February 27, 1896, judgment was rendered against said King on the ground that his title had been forfeited for non-assessment of taxes thereon. From this judgment a writ of error was obtained to the Supreme Court of the United States.

While said writ of error was pending in the Supreme Court, M. F. Stiles representing H. C. King and Sheppard representing McClintock, entered into a stipulation for the continuance of said cause in the circuit court of Wyoming and before the commissioner, until the cause of *King* v. *McClintock* should be decided by the United States Supreme Court, which case was to be submitted on briefs within the first ninety days of the term of that Court then in session; but if said Court should require oral argument in addition to the briefs, and should not decide said case upon such submission, then said proceeding in the circuit court should not be continued after the refusal of the Supreme Court to decide the cause, by reason of said stipulation.

At the June term of 1898 of said circuit court, John S. Sheppard presented his affidavit, charging Stiles with unprofessional conduct consisting of the violation of said stipulation in this, that in the absence of Sheppard and his client, and in violation of his duty as an attorney of that court, he dishonestly procured the circuit court of Wyoming to enter a decree substituting D. A. Robertson as commissioner in the room and stead of J. R. Robertson, to whom said chancery cause had been referred, and with whom a copy of said stipulation had been filed by affiant, and corruptly procured the said commissioner to proceed and take proof and make his report, without notice to affiant or his client, and secretly took his proof and corruptly and in disregard of his professional duty suppressed the evidence that had been taken before the first commisssioner, and procured said commissioner to file his report under said decree of reference,

wherein it was found that said King was entitled to redeem said tract of five hundred thousand acres of land. Affiant also stated his belief and charged that Stiles prepared said report or dictated its findings and procured one Shumate a practicing attorney in said court at the September term 1897 to obtain a decree of redemption of said tract and that Shumate at the instance and request of Stiles procured the entry of a decree permitting Henry C. King to pay to the commissioner of school lands of said county a small sum of money, adjudging that by the payment aforesaid he had redeemed the same. Affiant further stated that Stiles and Shumate who were associated as counsel in the case had frequent opportunity of giving him notice of their action and intended action in the case, but refrained from so doing and when Shumate moved the court to enter said decree of redemption for his client King, he represented to the court that there was no opposition to said redemption, and that no one was objecting or opposing the said decree, while he well knew there was objection by affiant on behalf of McClintock to any decree in favor of King.

Upon the filing of this affidavit a summons was awarded against Stiles requiring him to appear at the next general court and show cause if any he could, why his name should not be stricken from the roll of practicing attorneys in that court, and deprived of the privilege of practicing his profession in that court.

At a subsequent term of the court, said Stiles appeared and moved to quash the rule awarded against him for several reasons assigned. He also filed his answer to said rule denying every material allegation contained in said affidavit, and interposed a demurrer to said rule. Court overruled said demurrer and motion to quash and proceeded to hear testimony, and on March 30, 1899, entered an order holding that Stiles had conducted himself in a manner unworthy of a reputable attorney, and had abused his privileges as an enrolled member of the bar of that court, and ordered that his name be stricken from the roll of attorneys practicing at the bar of that court, and directed that he be prohibited from further exercising his office of attorney-at-law in that court. From this judgment Stiles obtained this writ of error.

Counsel for the State in their brief raise a question of juris-

diction, and claim that the writ of error was not the proper remedy. In considering this question, we ask first, what was the character of the accusation against Stiles in pursuance of which the penalty was inflicted? The only response can be that it was malpractice, consisting in the violation of said stipulation. The fact that the penalty imposed was a severe one is apparent when we take into consideration the privilege conferred by defendant's license to practice in all the courts of the State, which is acquired only after obtaining a certificate of good moral character, and when we consider further that striking from the roll of attorneys in one county, to that extent deprives him of his license, and degrades him in the ranks of an honorable profession.

In *Fisher's Case,* reported in 6 Leigh 619, it was held that, by the provisions of the statute, 1 Rev. Code chapter 76, section 6, a court cannot, for malpractice of an attorney or counsellor committed in its presence suspend the license of the party offending, in a summary way, but must direct an information to be filed against him, and inflict the punishment on a verdict of guilty found in such information. In that case, Chapman Johnson, attorney for Fisher, first applied to the Court of Appeals for a *supersedeas* to the order, which was refused. He then applied to the general court and the writ of error was allowed, jurisdiction taken of the case, and a decision rendered, in which the court recognizes its own power independent of any statutory restriction in a proper case to suspend or annul the license of an attorney, so far as it authorizes him to practice in the particular court which pronounces the sentence but no farther, and concludes by holding that before such a judgment as that pronounced by the court below could be given, the party accused must be regularly prosecuted by information or indictment and found guilty by a jury.

Again, in *State* v. *McClaugherty,* which was a proceeding for contempt of court, consisting in the publication of an article reflecting upon the circuit court of Mercer County, a writ of error was awarded and this Court took jurisdiction of the case and passed upon the questions involved. SNYDER, JUDGE, speaking for the Court, quotes with approval from the opinion rendered in the case of *Rice* v. *Commonwealth,* 18 B. Monroe 484: "The power to remove an attorney from the bar ought to be exercised with great caution and discretion, but it is a power inci-

dental to all courts, and unless it be clearly exceeded or abused by a circuit court this Court should not interpose, as it cannot decide with the same means of information that the court below was in possession of." Citing *ex parte Burr,* 9 Wheaton 530, in which case the opinion was written by Chief Justice Marshall, and the first point of the syllabus suggests a *quaere* "as to the authority of said court to interfere by *mandamus* in the case of the removal or suspension of an attorney of the district and circuit courts."

In *ex parte Secombe,* 19 How. 9, the court says: "It has been well settled by the rules and practice of the common law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed. The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court as the rights and dignity of the court itself."

The court having the right to use its sound judicial discretion in determining such matters, cannot be controlled in the exercise of its discretion by *mandamus.* See *Minturn* v. *Board of Supervisors,* 4 W. Va. 300. That this Court has jurisdiction of a writ of error to a judgment disbarring an attorney, see the case of *State* v. *Shumate* recently decided.

As to the merits of the case, can we say the charges upon which the plaintiff in error was disbarred were sustained by the testimony? He was charged with having obtained an order at the March term, 1897, substituting D. A. Robertson as school commissioner in place of his brother J. R. Robertson, but Col. Childers testifies that he wrote the order making the change at the request of J. R. Robertson, and was representing the State, having filed a bill in the case, and in presenting the order substituting the said commissioner, had no suggestion from Stiles or communication with him about it, and the evidence shows that Stiles was not in court during the term that C. M. Turley one of the counsel for McClintock was present and made no objection to the order.

It is charged that the plaintiff in error at the September term, 1897, requested H. K. Shumate to procure the making and entering of the decree permitting said King to redeem said five hundred thousand acres of land by the payment of a small sum of money, yet the testimony shows that the papers were presented and the decree of redemption asked for by Col. Childers who prepared the bill and represented the school commissioner, and it is also shown by the testimony and the certificate of the court, that Stiles was not present at that term of court.

M. F. Stiles is charged with suppressing the testimony taken before J. R. Robertson, but he shows in his testimony that such was not the fact, and no proof was taken to sustain the allegation.

It is also shown by the testimony that after the new commissioner was appointed and had given notice by publication that the school commissioner was proceeding to take testimony and a witness named Sell had been introduced before the commissioner by the State, Stiles appeared and cross-examined him, and perhaps offered some documentary evidence.

It further appears that the decree of redemption was entered by consent of counsel representing the school commissioner, and Wilder and Shumate, attorneys representing King, so that in my opinion the charges are not sustained by a preponderance of the evidence as they should be in accordance with the rule laid down in *Walker* v. *State*, 4 W. Va. 749. The judgment complained of is reversed.

*Reversed.*