# CHARLESTON.

## STATE V. JAMES K. SMITH.

Submitted April 15, 1919.   Decided April 29, 1919.

1. ATTORNEY AND CLIENT—*Disbarment Proceeding—Appeal—Juris-
   diction of Supreme Court of Appeals.*

   The Supreme Court of Appeals has jurisdiction of a writ of
   error to a judgment of a circuit court disbarring or suspending an
   attorney from the practice of his profession.   (p. 60).

2. SAME—*Disbarment—Rule.*

   Where it is sought to disbar or suspend an attorney for mis-
   conduct, a rule setting forth the facts constituting such miscon-
   duct should be served upon him, in order that he may have an
   opportunity to prepare his defense.   (p. 60).

3. SAME—*Disbarment—Charges.*

   In such a proceeding he can only be tried upon the charges con-
   tained in the rule.   (p. 60).

4. SAME—*Disbarment—Rule.*

   Where the misconduct charged is that of falsely and fraudulently
   procuring money from a client, the rule, or some paper therein
   specifically referred to, should state the facts which it is contended
   constitute false and fraudulent procurement of the money.   A
   general statement that he procured money by false and fraudu-
   lent means is not sufficient.   **(p. 60).**

5. SAME—*Disbarment—Soliciting Employment.*

   A charge in a rule that an attorney solicited employment, with-
   out showing that the same was by dishonorable or disreputable
   means, is not sufficient.   (p. 60).

6. SAME—*Disbarment    or    Suspended    Sentence—Solicitation    of
   Employment.*

   Soliciting employment by an attorney will not, under all cir-
   cumstances, justify his disbarment or suspension.   In order to
   justify such a result, such solicitation must be in a dishonorable
   or disreputable manner.   Where it consists of a mere effort to pro-
   cure employment in an honorable way for legitimate purposes it
   is not ground for suspicion or disbarment.   (p. 62).

7. SAME—*Disbarment—Evidence.*

   To disbar or suspend an attorney the evidence of the miscon-

duct charged against him must be full, preponderating, and clear.
(p. 66).

Error to Circuit Court, McDowell County.

Proceeding by the State of West Virginia against James
K. Smith. From action of circuit court of McDowell county,
suspending respondent from practice of law therein for two
years, he brings error.

*Reversed, and rule dismissed.*

*Litz & Harman* and *Sanders, Crockett & Kee,* for plaintiff
in error.

*E. T. England,* Attorney General, and *Charles Ritchie,*
Assistant Attorney General, for the State.

RITZ, JUDGE:

This writ of error brings up for review the action of the
Circuit Court of McDowell county suspending the respondent
James K. Smith from the practice. of law in that court for
the term, of two years.

The jurisdiction of this Court to review the action of the
circuit court by writ of error is challenged, it being con-
tended that there is no provision of law providing for such
review by this Court. In the case of *State* v. *Shumate,* 48
W. Va. 359, which was a proceeding to disbar an attorney-at-
law similar to the one involved here, the jurisdiction to re-
view the judgment of the lower court was sustained. It is
true, Judge BRANNON expressed some doubt upon the ques-
tion in that case, but the other members of the court, as he
states in his opinion, were clear that the jurisdiction ex-
isted. Without again reviewing the question, or discussing
it further, we adhere to the conclusion reached in the Shu-
mate case holding that the jurisdiction exists in this Court to
review by writ of error the judgment of a circuit court dis-
barring or suspending an attorney-at-law from the practice
of his profession.

The first contention made against the judgment is that the
rule upon which the proceeding is based does not charge any
misconduct justifying suspension or disbarment. This rule
charges that on the 19th of September, 1918, the respondent

falsely and fraudulently obtained from certain persons therein named the sum of $120.00; that said persons were at said time confined in the jail of McDowell county upon a charge of violating the selective service regulations of the United States, and that the respondent, well knowing that he had no power by which he could release said parties, obtained said money through false and fraudulent representations; and also charges the said respondent with seeking employment, and securing the money aforesaid, by going to the jail without being sent for or solicited by said parties. It will thus be seen that the two charges made in the rule are: first, that respondent falsely and fraudulently obtained money from the five parties named therein; second, that he sought employment by going to the jail and soliciting the same without being sent for.

As to the first charge, it is contended that it is insufficient for the reason that it does not say what Smith did which constituted a fraudulent procurement of the money, and as to the second it is contended that seeking or soliciting employment is not such a violation of professional ethics as under all circumstances justifies disbarment, for which reasons the rule should have been dismissed. Such proceedings as this are not, strictly speaking, lawsuits. They are more in the natrue of *ex parte* proceedings undertaken by the courts, or those charged with the administration of justice, with the view of ridding themselves of such persons as are shown to be unfit to perform the duties of an attorney-at-law. While this is true, it must also be borne in mind that the result is to deprive the one disbarred or suspended of the means of earning his livelihood. Ordinarily his training has been such as to render it hard, if not impossible, for him to secure a livelihood in another field of endeavor. It is therefore uniformly held that one who has been licensed to practice the profession of an attorney-at-law should not be suspended or disbarred therefrom in an arbitrary manner. He must be given an opportunity to be heard; he must be notified of the charges against him, and this notice should be sufficiently specific to enable him to procure the evidence to overcome the charges, or make an explanation thereof. Where the charge

against one is of such serious character as that of procuring money under false and fraudulent representations, it should not be made in such general terms as are used in this rule. It is quite true that the rule in such cases need not observe the strict technical accuracy required in common law pleadings, but where one is charged with what in effect constitutes a criminal offense, the charges should not be left to mere conclusions of law unaccompanied by a statement of the facts from which those conclusions are drawn. 6 C. J. 605. In *People* v. *Noyes,* 68 Ill. 151, which was a proceeding to disbar an attorney for misconduct, it was held that a specification in an information that the attorney took legal papers belonging to the files of the court is entirely too indefinite. Such a grave charge ought to be stated with sufficient particularity to enable the accused to make his defense. A similar holding was made in the case of the *People* v. *Matthews,* 217 Ill. 94. We think here that the charge of falsely and fraudulently obtaining money is entirely too indefinite and uncertain. It should have stated what the respondent did that constituted the alleged misconduct. Some reasonable certainty must be observed in the conduct of such proceedings if the rights of one sought to be disbarred or suspended are to be preserved. Not only should the charges be reasonably specific, but the evidence and findings must be based upon the charges made. The party cannot be charged with one thing and evidence introduced and a finding made of a different character of misconduct, and the accused party be suspended or disbarred therefor. 6 C. J. 605; Thornton on Attorneys- at-Law, § 877.

As to the other charge that the defendant solicited employment without being sent for, it may be said that the solicitation of employment by an attorney-at-law is not in all cases a sufficient ground for disbarment or suspension. In many, in fact in most instances, it is unethical, and may be a ground of suspension from the practice, but there are many instances in which such would not be the case, and a general statement that one solicited employment without showing that such solicitation was in a dishonorable or a disreputable way, is not a sufficient charge to justify suspension or disbarment. Thornton on Attorneys-at-Law, § 844.

But it is contended that the defendant waived his right to challenge the sufficiency of the rule by not moving to quash the same before making answer thereto, and that if the evidence is sufficient to justify the conclusions arrived at by the court the judgment should not be reversed, even though the rule may inaptly or insufficiently state the charge of misconduct. The facts proven in this case are that the respondent was employed to represent a man by the name of Harden who was confined in the jail of McDowell county upon a charge of murder. He went to the jail for the purpose of conferring with this client, and did confer with him in regard to his defense. On the succeeding day his client was given a preliminary hearing before a justice of the peace, and was discharged from custody. On the next day this man Harden told Smith that on the day he, Smith, was at the jail, another man confined in the jail had asked him who Smith was, and upon being informed that Smith was Harden's lawyer, this other party told Harden that he desired to see Smith, and to have him represent him in his case, and Harden went to the jail of the county with Smith and introduced him, or rather pointed out the man who he said desired to confer with him. Smith asked this man why he was confined in jail, and was informed that he had been there for twenty days for failing to make out his questionaire under the selective service regulations of the United States. This man was a Russian and could scarcely speak or understand the English language. Smith and Harden testify that Smith thereupon told him that he could get him out of jail, and if he was able-bodied and could pass the physical examination, he would be sent on to a training camp. If he could not pass the physical examination, he could go back to work, and that this Russian replied that he did not care where he was sent so they got him out of jail, and asked Smith what he would charge him for his services; that Smith replied that his charges would be $25.00; that the Russian informed him that he only had twenty dollars, and gave it to him for this purpose. There were four other Russians, none of whom either speak or understand the English language, likewise confined in the jail upon the same charge, and when this man gave Smith

the money these other Russians made inquiry of him what he was doing, and being informed that he had employed a lawyer to get him out of jail, they likewise desired the services of Smith to get them out of jail, they having been confined therein for twenty days. It appears that these people were arrested without a warrant, and were confined and held during all of this time without any steps being taken by the officers who incarcerated them, or by anyone else, to make charges against them, or to give them a hearing, or do anything by which their condition might be mitigated. Smith and Harden say that Smith informed the man who could speak English that he would represent them upon the same terms he had proposed to the first man, to-wit, for $25.00 each, and upon this being communicated to them they immediately took out the money and each gave him $25.00; that he thereupon went to the local draft board and informed the clerk of the board that these men were in jail, having been arrested for failure to fill out their questionaires, and that he desired them taken out and some disposition made of them; that the clerk of the draft board had them brought out, and after submitting them to an examination, none of which was understood by Smith, as he says, it was determined to send them to a training camp on that same evening. All these Russians now testify that Smith promised to get them out of jail and send them back to work, and upon the same day, and before they were taken away, they made an affidavit upon which the rule in this case was issued. As to four of them, they could not speak or understand one word of English, so that it is quite apparent as to what they say as to Smith's promises they got from the one who could speak and understand English imperfectly. This one says that Smith did promise to get them out and send them back to work. They each testify that Smith was not sent for and, of course, as to four of them, he was not, nor does he make any contention that he was. As to the other one, the evidence convinces us that he did send for Smith, or at least expressed a desire to Harden to see Smith. At any rate, Harden made such a communication to Smith, and it was in pursuance of this that Smith went to the jail. All of these parties, when

they testified, state that it was immaterial to them whether they went to a training camp, or went back to work; that their sole purpose was to get out of jail. Upon this evidence, we think it fairly appears that Smith did not solicit employment from these parties, nor did he go to the jail without being sent for, or at least that he believed that he had been sent for when he went, Harden having so advised him. Of course, there is a question of veracity between Harden and the only one of the Russians who speaks English as to whether or not he did express a desire to see Smith. It is hardly in the range of probability that Harden would have communicated to Smith that this man wanted to see him if he did not express such a desire. Whether he did or not, it is undisputed that Harden told Smith that this man wanted to see him, and that it was in response to this request so communicated to him that Smith went to the jail. We must therefore hold that the second charge contained in the rule fails for lack of proof. Nor can we say as matter of law that if Smith had gone to the jail, under the circumstances existing here, and offered to serve these men in the capacity of attorney, that he would be guilty of such conduct as would justify suspension from the practice of his profession. As before stated, they had been in jail for nearly three weeks without a specific charge being lodged against them, without a warrant having been issued for their arrest, and we cannot say as matter of law that an attorney who is informed of the existence of such a condition as this in relation to five ignorant foreigners would be guilty of misconduct in offering to have them brought before the proper authorities and their status determined.

Nor do we think the evidence justifies the conclusion that Smith was guilty of false and fraudulent representations in procuring the money from these people. If they had only been recently arrested and placed in jail upon the charge upon which it is stated they were incarcerated, it might be that the fee charged would be excessive, but when we consider that they had been confined in jail for twenty days without anybody being interested enough in their condition to bring them before the tribunal whose duty it was to hear the charges

against them, without even a warrant having been issued for their arrest, it occurs to us that the circumstances are such as might reasonably warrant an attorney in coming to the conclusion that he might have difficulty in securing for them a hearing by the proper tribunal. Nor does the evidence justify the conclusion that Smith promised to send these men back to work. He and Harden, who was with him at the time, both testify positively that he did not. They say that all he promised them, and, of course, in fact all that he could do, was to secure them a hearing before and a disposition of their cases by the proper tribunal. It is true these foreigners say that he did promise to send them back to work, but as before stated, the testimony of four of them is based solely on what the other one told them, and the testimony of this one is inconsistent, not only with the testimony of Smith and Harden, but with what would probably occur under the conditions that existed at the time, as each and all of these men, even at the time of the hearing on this rule, expressed no preference as between going to a military camp and going back to work, their one purpose being to be released from jail. It must be borne in mind that the evidence, to justify the disbarrment or suspension of an attorney, is required to be such as to make it reasonably certain that he is guilty of the misconduct with which he is charged. It is quite true that proceedings such as this are not for the purpose of punishing a guilty party, but are for the protection of the courts and the public, but until it has been established by satisfactory evidence that the accused party is guilty of some substantial misconduct he will not be deprived of his right to pursue his calling upon the theory that he may abuse the privileges of the court, or will be a menace to the public in the further practice of his profession.

Our conclusion is that the evidence is not sufficient to justify the judgment of suspension. The same will therefore be reversed and the rule dismissed.

*Reversed, and rule dismissed.*