*In Re:* PHILIP H. MARCUM

(No. 10294)

Submitted October 3, 1950.   Decided December 12, 1950.

*L. W. Blankenship,* for P. H. Marcum.

*John B. Meek, Charles C. Wise, Jr.,* for West Virginia State Bar.

GIVEN, JUDGE:

Dollie Toney Peters, on December 19, 1949, filed her petition in this Court alleging that she had been prejudiced by improper actions of Philip H. Marcum, an attorney at law, duly licensed and admitted to practice in this Court, in relation to a matter pending in this Court. The petition was verified and by order, entered December 19, 1949, was referred by this Court to the Secretary-Treasurer of the West Virginia State Bar, pursuant to the provisions of Article 3 of the rules governing Procedure for Disciplining, Suspending and Disbarring Attorneys. Thereafter the matter was referred by that officer to the Committee on Legal Ethics for the Fourth Congressional District, wherein the attorney resided.   That committee,

after due notice to Marcum, held hearings at which evidence relating to the matters charged against the attorney was produced, both in support of the charges and in denial thereof. Marcum appeared at the hearing in person, and by counsel, and before the presentation of any evidence tendered and filed with the committee his answer, admitting certain of the allegations of the petition and denying others. The West Virginia State Bar was represented at the hearing by counsel. The report of the committee showing its "findings of fact" and "recommendations", together with the pleadings and the evidence taken at the hearing, were returned to this Court and filed on the 9th day of June, 1950. Thereupon an order was entered requiring Marcum to appear before this Court on the 6th day of September, 1950, and show cause why the recommendations of the committee should not be put into effect. On September 1, 1950, Marcum filed his petition herein praying for a continuance of the matter for the purpose of affording him the opportunity of taking further depositions in his behalf. This continuance was granted on September 6, 1950, and the hearing continued to October 3, 1950, at which time the matter was submitted to the Court, without oral argument. Marcum has filed with this Court his memorandum and supplemental memorandum in support of his exceptions to the findings of the committee filed herein, on the 27th day of September, 1950, and the West Virginia State Bar has filed a memorandum in support of the findings.

The allegations of the petition filed by Dollie Toney Peters are to the effect that on or about June 9, 1947, she employed Marcum as an attorney at law to represent her in a chancery suit to be prosecuted by her against Essie Gagai, in the Circuit Court of Cabell County; that on or about the 22d day of September, 1947, the circuit court entered a final decree, deciding the cause against her, and that on the 8th day of December, 1947, this Court granted an appeal from the final decree; that she was informed by Marcum that the estimated cost of printing the record on the appeal was $158.20; that she paid unto Marcum on the 12th day of January, 1948, the amount of the esti-

mate; that in the month of September, 1949, she was advised that the appeal had been dismissed by this Court for the reason that the costs of printing the record had not been advanced by Marcum to the Clerk of the Court; that she paid unto Marcum certain other sums amounting to approximately $298.00 in connection with the prosecution of the chancery suit, and that at least $100.00 thereof was for professional services rendered by Marcum; that Marcum at no time gave notice of his intention to apply the $158.20 toward payment of his professional fees; that she relied upon him to protect her interests in the chancery suit and that as a result of the improper application by Marcum of the $158.20 to the payment of his professional fees, resulting in the dismissal of the appeal by this Court, she had been greatly prejudiced.

The answer admits the employment as alleged, the institution and prosecution of the chancery suit, the appeal from the final decree of the Circuit Court of Cabell County, and the receipt of the $158.20, and that such sum was received by Marcum for the express purpose of being advanced to the clerk of this Court for the payment of the estimate of the costs of printing the record on the appeal. The answer alleges in effect that Mrs. Peters agreed to pay respondent $150.00 for his services in the chancery suit in the circuit court and all costs and stenographic expenses incurred in connection therewith; and $250.00 for his services in obtaining and prosecuting the appeal and costs, travel and stenographic expenses; that one-half of the $250.00 was to be paid unto Marcum upon his fees before the petition for the appeal and note of argument to accompany the same were filed; that she agreed to pay him an additional fee of $75.00 for prosecuting a contempt proceeding against the defendant in the chancery suit, and that she employed him to represent her in certain other matters, for which services he had not been paid; that he had been paid the sum of $83.00 only upon his fees; and that he had repeatedly made demands of Mrs. Peters for payment of the fees owing to him.

Respondent further alleges, in effect, that on February 9, 1948, he wrote Mrs. Peters that he proposed to apply toward the payment of his fees the $158.20 received by him for the purpose of being applied to the payment of the costs of printing the record, inasmuch as Mrs. Peters had failed to make payment of his fees in accordance with the agreements relating thereto; that Mrs. Peters made no answer to the letter and made no further payment upon his fees, or upon the costs, and that "He concluded, therefore, that Mrs. Peters had decided to abandon her appeal." Respondent states in his answer that there was due from Mrs. Peters upon his fees for professional services rendered her the amount of $344.00.

The findings of the committee were to the effect that Mrs. Peters had paid, in connection with the prosecution of the chancery suit, the sum of $596.35, of which sum $480.60 was paid to Marcum and $115.75 to the Clerk of the Circuit Court of Cabell County; that of the sum paid to Marcum there was paid to the clerk of the circuit court, the sheriff of Cabell County, and the clerk of this Court, the sum of $132.75; that Marcum received from Mrs. Peters certain sums for costs represented to have been paid but which were not paid or to be paid; that the letter of February 9, 1948, mentioned above, and another letter supposedly written December 3, 1947, copies of which letters were exhibited with the evidence, were not written or mailed by Marcum; that Mrs. Peters did not consent to the application of the $158.20, paid to Marcum for the sole purpose of paying the costs of printing the record, toward the payment of his fees; that Marcum received from the clerk of this Court a letter dated June 10, 1949, advising that the appeal would be dismissed in the event costs were not promptly paid, and that Marcum did not notify Mrs. Peters of such facts before the dismissal of the appeal on September 7, 1949. The recommendations of the committee were:

"The Committee on Legal Ethics for the Fourth Congressional District of The West Virginia State Bar recommends to the Supreme Court of Appeals of West Virginia that the license of Philip

H. Marcum to practice law in the State of West Virginia be suspended for an indefinite period of time but for a minimum period of one year, with the privilege on the part of Philip H. Marcum, after the expiration of one year and after reimbursement to Dollie Toney Peters of the total amount expended by Dollie Toney Peters in the case of Peters v. Gagi, et al., namely, $596.35, and after the reimbursement to The West Virginia State Bar of the actual costs incurred in this proceeding, namely, $189.12, to apply for reinstatement to practice law in the State of West Virginia."

The grounds of objection filed by Marcum are:

"FIRST. For that the procedure adopted and followed in this matter, is contrary to and at variance with the provisions of Articles 2, 3 and 4, *Procedure for Disciplining and Disbarring Attorneys-at-law, Code of Professional Ethics,* 128 West Virginia, page liii, and Section 7, (a), (b), (c), and (d), of the *Constitution of the West Virginia State Bar.*

"SECOND. For that the said findings of fact and recommendations of said Committees are contrary to the law and the evidence.

"THIRD. The said findings of fact and recommendations are not made upon full, clear and preponderant evidence."

Much of the evidence introduced before the committee relates to immaterial matters. We will attempt to state only the evidence relating to what we believe to be the controlling question. Both Marcum and Mrs. Peters testified to the employment of Marcum in the chancery suit and that Marcum represented her professionally throughout the proceeding and as well in the contempt and other proceedings mentioned above. They do not agree, however, as to the amount Marcum was to be paid for such services, but there seems no reason to doubt that Mrs. Peters owed Marcum for such professional services more than $158.20 at the time he applied that sum toward the payment of his fees. He admits that he received that amount for the sole purpose of advancing the same to the

clerk of this Court to be applied to the payment of the costs of printing the record, and that it was not so applied, but applied instead toward the payment of his own fees. A receipt for that sum, signed by Marcum, is exhibited with the evidence and recites that the amount was received for "printing costs per estimate by clerk in re Peters v. Gagai on appeal to Supreme Court." It is not disputed that the appeal was dismissed by this Court because of failure to advance such costs to the clerk, and it is clear that Marcum was notified by the clerk about June 10, 1949, that the appeal would be dismissed in the event the costs were not advanced promptly. The appeal was dismissed for that reason, but not until September 7, 1949. Marcum testified that the reason he applied the $158.20 toward the discharge of his fees was that:

"* * * A great amount of work had been done for Mrs. Peters. There had been constant and repeated promises of some payment for the work done by her and there had been no substantial payments. I believe the total amount that could be credited to fee as of the date of the writing of that letter was $83 in the face of a $475 fee, including all work done, and I felt that she was not making the proper effort to take care of her end of the bargain, that I had done everything that I had bargained to do and agreed to do, had spent my time and I had paid money out of my own pocket to carry this thing along for Mrs. Peters, and that I was justified in the premises in devoting this money to the payment of my fee, especially in view of the letter I had received from Mr. Jarvis on February 6, and which as the committee will see on examination of that letter that the Court had suggested that I might proceed with my plan to print a diminished record, and that some time later an estimate, a new estimate of printing costs would be forwarded to me. And I did it, and gave her credit for $158."

Marcum contends that he wrote and mailed letters to Mrs. Peters dated December 3, 1947, and February 9, 1948, advising her that in the event of failure to "make a timely deposit of printing costs the appeal may be dismissed upon motion of the appellees", calling her atten-

tion to her continued failure to make payments toward the satisfaction of his fees, and notifying her that:

"* * * In view of this situation and the large amount of work I have done for you, and for which you are making no effort to pay for, this is to advise you that I propose to apply the $158.00, I now hold, as a credit against the fees you owe for past and present legal services. When this credit is given, you will still owe me $234.00, not including travel expenses of some nine or ten dollars."

Purported copies of these letters are exhibited with the evidence; the copy of the letter of December 3, 1947, mentions the estimate of $158.20, while a letter from the clerk to Marcum, advising the amount of the estimate, bears date December 4, 1947. Mrs. Peters denies receiving either of the letters or in any manner receiving notice to the effect that the appeal would be dismissed in the event costs were not paid. The committee finding that the letters were, in fact, not written, we believe, is fully supported by the evidence. Marcum having admitted that the $158.20 was received by him for a special purpose and that it was not used by him for that purpose, the burden was placed upon him to justify his actions. Assuming, however, that the letters were written to and received by Mrs. Peters, we think they would not justify the action of Marcum in applying the sum toward payment of his fees, for it is admitted that no answer to any such letters, consenting to the proposal to so use the $158.20, was ever received by Marcum. He could not avoid the duty of depositing the sum with the clerk of the Court merely by writing a letter to Mrs. Peters. The committee also found that Mrs. Peters did not "expressly or impliedly" consent to the application of the sum of $158.20 to the payment of the fees of Marcum, and we think that finding fully supported by the evidence.

Marcum also contends that after he had received from the clerk of this Court a revised estimate of the costs of printing the record he notified Mrs. Peters to that effect, and testified to the fact that she agreed to pay the revised

estimate. She denies receiving any such notice, or making any such agreement, however, and we think the respondent has clearly failed to carry the burden of proof as to his contention.

Several attorneys-at-law licensed and admitted to practice in this Court, in the circuit and other courts of Cabell County, of high character and standing, in answer to a hypothetical question based upon the facts as contended for by Marcum, testified to the effect that it was their opinion that Marcum had violated no code of legal ethics in applying the $158.20 to the payment of his fees, and that his act in that respect was in accord with the general practice of lawyers at the bar where Marcum usually practiced; but these attorneys further stated, in effect, that if the facts, assumed in the hypothetical question as being true, relating to the alleged consent or agreement of Mrs. Peters to the application of the $158.20 to the payment of the fees, were, in fact, untrue, in their opinions the action of Marcum in so applying the sum was improper, unprofessional and unjustified. As above noted, we are of the opinion that the committee correctly found that Mrs. Peters did not give her consent or agree to the application of the sum to the payment of Marcum's fees. Certain evidence was offered by Marcum relating to the reputation of Mrs. Peters as to truth and veracity. We think such evidence of little, if any, value in view of the fact that what we deem to be the controlling circumstances are admitted by Marcum or are clearly established by the evidence.

The question to be first considered by the Court relates to the procedure adopted herein. By order of March 28, 1947, this Court, pursuant to the authority vested in it by Chapter 44, Acts of the Legislature, 1945, and its inherent rule making power, adopted and promulgated rules of Procedure for Disciplining, Suspending and Disbarring Attorneys-at-Law, 128 W. Va. li. Article 1 of such procedure provides that after conviction of an attorney of any "felony or of any other crime involving want of honesty or integrity", his license to practice shall be sus-

pended. Article 2 provides that "If the Supreme Court of Appeals or any other court of record in this State, except the county court, observe any malpractice therein by any attorney, such court shall order the attorney to be summoned to show cause why his license shall not be suspended or annulled." Article 3 provides that "If any complaint, verified by affidavit, be made to the Supreme Court of Appeals or to any court of record of this State except the county court, and such complaint charge malpractice on the part of any West Virginia attorney, such court shall forthwith forward such complaint to the Secretary-Treasurer of the West Virginia State Bar, and the said Secretary-Treasurer shall proceed as provided in the Constitution of said Bar." Section 7 of the Constitution of the West Virginia State Bar, 128 W. Va. lix, relating to procedure for disciplining, suspending and disbarring attorneys-at-law provides, in effect, that the Executive Council shall appoint a committee of five from each congressional district of West Virginia; that such committee shall consider every complaint of unprofessional conduct reported to it, whether from the Secretary-Treasurer of the State Bar or otherwise; and subsection (a) of Section 7 requires that the committee, if it finds that any report justifies further investigation, shall cause the complaint to be reduced to writing, verified, and a copy thereof served upon the "accused member", and to give notice of the "time and place of the hearing". Subsection (c) of Section 7 provides that if the committee decides that a charge of "disbarment, suspension or other disciplinary action is merited", it shall make report, with a "verified complaint, record of proceedings and recommendation" to the clerk's office of the court having jurisdiction.

The contention of respondent appears to be that since the committee did not prepare, file and serve upon him the complaint required by subsection (a), he was not sufficiently notified before the hearing of the nature of the charges against him. We think, however, that the requirement contained in subsection (a) that the committee prepare a complaint, relates only to those matters referred to it for consideration wherein no verified com-

plaint was filed in a court of record. As above noted, a verified complaint specifying the charges against respondent was filed in this Court and after the matter was referred to the committee a copy thereof was caused by the committee to be served upon respondent, along with a notice of the committee of the time and place of hearing, more than ten days before the time fixed for the hearing. We think this was all that was required by the rules governing Procedure for Disciplining, Suspending and Disbarring attorneys-at-law, by the Constitution of the West Virginia State Bar or Code, 30-2. Moreover, respondent appeared before the committee at the hearing and filed his answer denying the charges made against him in the petition without requesting any further particulars as to the charges, and he was afforded ample opportunity by the committee and by this Court to fully develop his defense.

As to the contention of respondent that the findings of the committee are not supported by the evidence, little more need be said. The receipt by Marcum of the $158.20, for the specific purpose of deposit with the clerk of this Court for the payment of the estimate of costs for printing the record, in a matter then pending in this Court, is admitted. Also admitted is the fact that respondent applied that sum to the payment of his professional fees. The finding by the committee that such application of the sum was made by respondent without the consent or knowledge of Mrs. Peters is fully and clearly established by the evidence. Other findings of the committee are likewise fully and clearly established by the evidence. This is all that is required. "To suspend or annul the license of an attorney in a procedure for that purpose * * * the misconduct which justifies the suspension or the annulment of his license must be established by full, clear and preponderant evidence." Point 2, syllabus, *In Re: Damron*, 131 W. Va. 66, 45 S. E. 2d 741. See *State* v. *Smith*, 84 W. Va. 59, 99 S. E. 332; *State* v. *Stiles*, 48 W. Va. 425, 37 S. E. 620; *State* v. *Shumate*, 48 W. Va. 359, 37 S. E. 618.

Respondent in his memorandum filed with the Court contends that he was entitled to apply the $158.20 to the payment of his fees by virtue of an attorney's lien against the same. In 7 C. J. S., Attorney and Client, Section 226, it is stated: "Property or funds delivered for a special purpose by a client to his attorney cannot constitute the subject matter of a retaining lien in favor of such attorney. For example an attorney has no lien on property placed in his hands for a special purpose under such circumstances that a trust arises which is inconsistant with, or adverse to, the claim of a lien." We are cited no authority holding otherwise and after diligent search have found none.

Respondent also complains bitterly of the "hostile" attitude of the committee, contending that the questioning of respondent by some of the members of the committee clearly indicated bias and "that the committee constituted itself as a sort of inquisitional group rather than an examining body, and went far beyond the scope of its duties." We have carefully examined the record as to this contention and believe it to be without substantial merit. Some persistency on the part of some of the members of the committee in pursuing the questioning of witnesses is noted, but we think not to an extent sufficient to indicate bias or prejudice. Of course, it is important that such committee hearings be conducted in a fair and impartial manner and that members thereof not permit themselves to become unconsciously biased or prejudiced either for or against an attorney being proceeded against, but it must not be overlooked that it was the duty of the committee to see that the material facts be fully and clearly developed for the benefit of this Court. We believe the actions of the committee, and of each of the members thereof, in the conduct of the hearing, were fair and impartial and that respondent was afforded an ample opportunity to present every phase of his defense.

From what has been said it necessarily follows that this Court approves the findings of fact made by the com-

mittee, and itself finds, that respondent received from Mrs. Peters the sum of $158.20 for the sole and special purpose of depositing the same with the clerk of this Court for the printing of the record of an appeal then pending in this Court, wherein he represented Mrs. Peters; and that he failed to so deposit the sum, but instead applied it, without the consent or knowledge of Mrs. Peters, and to her prejudice, toward payment of his own fees for professional services rendered to her. Such action on the part of respondent was improper, unprofessional and in no way justified.

We have concluded, however, not to follow the recommendation of the committee in respect to the reimbursement of Mrs. Peters, due in part to the unsatisfactory state of the evidence as to the exact sums paid by her to respondent, and due in part to the fact that the purpose of this proceeding was to discipline, suspend or revoke the license of an attorney, and not for the purpose of affording an opportunity for recovery by petitioner. As to the rights of the parties in this respect, the usual remedies are available.

An appropriate order will be entered suspending the license of respondent, Philip H. Marcum, to practice law in the State of West Virginia, with a provision to the effect that he may, after one year from the date of the entry of the order, apply to this Court for reinstatement of his license to practice law in this State, provided that he then shall have refunded to Mrs. Peters the sum of $158.20, the amount found to have been improperly used by respondent; and shall have refunded unto the West Virginia State Bar the sum of $189.35 expended by it in the prosecution of this proceeding; and shall have paid the costs incurred in this Court in connection with this proceeding.

We are not unmindful of the severity of this action against respondent. To deprive an attorney of the use of his license is to deprive him of a very valuable right and involves his character and standing in the profession. A reinstatement of the license, if later allowed, will not al-

ways remove the disabilities thus created. Clients will probably turn to other attorneys for advice and representation during continuance of the suspension and thereafter, because of doubt created as to character, and may be lost to the attorney forever. Earning power of the attorney will usually be destroyed during any period of suspension. Yet the high character of the duties of an attorney toward his client, the public and the courts requires that he keep his professional actions free from unprofessional conduct. This should constitute no difficulty or burden to an attorney, for all of his education, training and experience in the profession have directed him to that end. For these reasons it is necessary that the code of professional ethics promulgated for the governing of the actions of attorneys-at-law be enforced with reasonable strictness as against those very few who transgress. This is necessary if the standing of the profession is to be kept at the high plane rightly expected of it by the public. It is necessary for the protection of the courts, of the public, and of the great majority of the profession. It should also be pointed out, however, that courts will always be on guard against unjustifiable charges or accusations against attorneys, for "Common experience teaches that falsifiers and profligates, when frustrated in their designs, are quick to place on others the blame for the failure which results from their own misdeeds", as pointed out in the opinion in the *Damron* case.

*License suspended.*