In The Matter Of: P. W. Hendricks, *Attorney*

(No. 13121)

Submitted September 21, 1971. Decided December 7, 1971.

*Ned H. Ragland,* for complainant.

*P. W. Hendricks,* for defendant.

PER CURIAM:

This is a proceeding by the Committee on Legal Ethics of the West Virginia State Bar, as complainant, which is vested with jurisdiction to maintain this proceeding by Section 4, Part A, Article VI, of the By-laws of the West Virginia State Bar, against P. W. Hendricks, an attorney at law, living and practicing his profession at Madison, Boone County, West Virginia, and an active member of the West Virginia State Bar, herein sometimes referred to as the accused, in which the Committee seeks an order of this Court to annul the license of Hendricks to practice law in the State of West Virginia.

The proceeding is based upon Section 19, Part D, Article VI, of the By-laws of the West Virginia State Bar which provides that in any case in which the Committee determines to institute proceedings in the Supreme Court of Appeals, the Committee shall cause a verified complaint to be prepared, addressed to the Court, concisely setting forth the facts of the case, the reasons and grounds assigned for the suspension or annulment of the license of the accused, and the Committee's prayer as to action and relief sought, and the complaint, together with a certified copy of the Committee's report shall be transmitted to and filed in the Supreme Court of Appeals by delivery to the Clerk of the Court.

The complaint, together with the verified report of the Committee, as an exhibit, was duly filed in this Court July 23, 1971. Upon the complaint this Court on July 28, 1971, issued a rule returnable September 21, 1971, commanding Hendricks to appear before the Court at that time to show cause against the entry of an order annulling his license to practice law in the State of West Virginia.

Upon the return day of the rule this proceeding was submitted for decision upon the complaint and its exhibit, consisting of the Committee's report, the answer of the accused and its exhibit, consisting of an affidavit of one of the complainants, Mildred M. Adams (Terry), the

testimony of numerous witnesses, including Hendricks in his own behalf, adduced at hearings before the Committee on August 19 and 20, and October 19 and 20, 1970, in Madison, Boone County, West Virginia, and the numerous exhibits filed with the testimony at such hearings, and upon the written brief and the oral argument of the attorney for the Committee and the written brief and the oral argument of Hendricks who appeared in his own behalf.

It appears from the report of the Committee that it investigated numerous complaints against the accused as provided by Section 12, Part B, Article VI, of the By-laws of the West Virginia State Bar and decided to hold formal hearings upon the matters investigated as provided in Section 13, Part B, of Article VI, of the By-laws; that the Committee caused a notice and a plain statement of charges against the accused to be served and executed upon him as provided by Section 14, Part B, of Article VI, of the By-laws and held hearings upon the charges on August 19 and 20, and October 19 and 20, 1970; that Hendricks filed his answer denying the charges; and that the Committee caused a statement of its findings and recommendations to be prepared and reported to Hendricks and to the President and the Secretary of the West Virginia State Bar as provided by Section 17, Part C, Article VI, of the By-laws.

As to the seventeen separate charges set forth in the report of the Committee, the complaint alleged that Hendricks has not observed the high standards of professional conduct and has not carefully observed the Canons of Ethics promulgated by this Court, that he has violated Canons Numbers 4, 8, 11, 21, 27, 28 and 44, in effect at the time of the alleged misconduct; that he has detained money collected by him in his professional capacity and in a fiduciary capacity without bona fide claim to such money; that he has solicited professional business; that he has been guilty of conduct involving fraud and deceit, and that such conduct constitutes sufficient grounds for

investigation and for the institution of appropriate proceedings as provided by Section 2, Article VI of the By-laws, which contains this language:

"Every member of the legal profession shall observe the highest standards of professional conduct. The canons of ethics promulgated by the supreme court of appeals of West Virginia now or hereafter in effect shall be carefully observed. Any allegation of: Violation of such canons; the commission of a criminal offense showing professional unfitness or moral turpitude; the detention of any property or money collected in any professional or fiduciary capacity without bona fide claim thereto; the solicitation of professional business; or any conduct involving fraud or deceit, shall, among other things, constitute good grounds for investigation as hereinafter provided and, if deemed warranted, for the institution of appropriate proceedings."

The prayer of the complaint is that the license of Hendricks to practice law in the State of West Virginia be annulled and for such other relief as may be warranted by the record and as may seem just to this Court.

The specific charges against Hendricks concerning which evidence was introduced at the hearings before the Committee on August 19 and 20, and October 19 and 20, 1970, and which involve the clients of Hendricks, are 1, complaint of Mr. and Mrs. Willie Yeager; 2, complaint of Mr. and Mrs. Johnny Bryant; 3, complaint of Harvey Patterson; 4, complaint of Mr. and Mrs. Luther R. Perry, Jr.; 5, complaint of Mary Campbell; 6, complaint of Ronald Sigmon; 7, complaint of Mildred Adams [Terry]; 8, complaint of Myrtle Alice Stacy; 10, complaint of Sammie White; 13, complaint of Delmer Dean Jarrell; 14, complaint of Helen Marie Tackett; 15, complaint of Howard Miller and 17, complaint of Mr. and Mrs. Bert Peros. Charge 11 relates to complaint of Fred L. Davis, Jr., of the West Virginia Workmen's Compensation Commission, and charge 12 relates to activities of

the accused in connection with The Association of Disabled Miners and Widows, Inc.

Charges 9 and 16 were dismissed by the Committee for the reason that the complainant concerning charge 9 did not appear and offer proof at the hearings, and the evidence in support of charge 16 was considered by the Committee to be insufficient to sustain the charge.

Before testifying Hendricks was informed by the Committee that he was not required to testify and, after being so informed, he voluntarily gave testimony in his own behalf with respect to the various charges. He also elected to act in his own behalf and not to secure the assistance of counsel to represent him.

Charge 1. Hendricks was engaged by Mr. and Mrs. Willie Yeager and paid a fee of $200.00 to institute and prosecute to completion an adoption proceeding. He told his clients that the Circuit Court of Boone County had authorized the adoption and that nothing remained except the preparation, signing and filing of final papers. After considerable delay, the clients learned that no such proceeding had been instituted and dismissed the accused who prior to the hearing returned the fee of $200.00 to his clients. The Yeagers employed another attorney who promptly obtained the relief sought in an adoption proceeding. The conduct of the accused violated Canon 21, then in effect, which required punctuality and concise and direct action by the lawyer in the trial and disposition of causes, and involved fraud and deceit contrary to Section 2, Article VI of the By-laws.

Charge 2. Hendricks was employed by Johnny Bryant who had been convicted of second degree murder and sentenced to the penitentiary. At the time, Bryant was in the county jail in Lincoln County. After a short conference with Bryant and his wife, Hendricks assured Bryant that he could reverse the conviction and obtain a new trial and his acquittal and agreed with Bryant and his wife that he would undertake that responsibility for a

fee of $1,000.00 and would guarantee that result. Relying upon that assurance the Bryants paid Hendricks a fee of $1,000.00 and paid $400.00 for the needed transcript of the proceedings of the trial in which Bryant was convicted. Hendricks failed to file the required notice of intent to appeal to this Court, and failed in two applications to obtain an appeal. After Bryant's confinement in the penitentiary he obtained a writ of habeas corpus in the United States District Court because of the failure of the accused to file the notice of intent to appeal and in the habeas corpus proceeding Bryant was remanded to the Circuit Court of Lincoln County for the imposition of a new sentence. Hendricks also falsely represented to Bryant that he had arranged for his release on bail when in fact no such arrangement had been concluded. The conduct of the accused violated Canon 8, then in effect, which required a lawyer to obtain full knowledge of his client's cause before advising him with respect to it, and his false representation concerning bail constituted fraud and deceit contrary to Section 2, Article VI of the By-laws.

Charge 3. Hendricks was employed by Harvey Patterson, a prisoner in the West Virginia Penitentiary, who paid the accused a fee of $900.00 to seek an appeal to this Court. The accused promised his client to present such appeal at the earliest opportunity and informed the client that he had made several appearances in this Court when in fact he made no appearances and sought no appeal from this Court. This conduct of the accused in receiving and retaining a fee for which he rendered no service violated Canon 11, then in effect, which required a lawyer to refrain from any action by which he abuses or takes advantage of the confidence reposed in him by his client, and in falsely informing his client that he had made appearances in this Court constituted fraud and deceit contrary to Section 2, Article VI of the By-laws.

Charge 4. Mrs. Luther R. Perry, Jr. employed the accused to prosecute an action for personal injuries upon the basis of a contingent fee of one-third of the recovery. Without the consent of the client the accused, in January,

1969, effected a settlement of the claim for $6,700.00 and obtained a check for that amount. He did not inform his client of the settlement for a period of four months during which time he advised his client to settle her claim for that amount. To induce her to accept the settlement he agreed that she should receive $5,000.00 of the $6,700.00 settlement; that his fee should be $1,700.00; and that he would pay the medical expenses which he failed to do. He gave his client a post-dated check for the $5,000.00 but upon her later insistence that he give her a currently dated check, he did so, but requested her to withhold payment on the check for a period of two weeks, at which time the check was paid. The conduct of the accused violated Canon 11, then in effect, which required a lawyer to account promptly for money collected for his client, and was contrary to Section 2, Article VI of the By-laws.

Charge 5.  Mary Campbell employed the accused in the summer of 1968 to represent her in a divorce action against her husband, Harry Campbell, who was represented by another attorney. The suit was instituted but there was delay by the accused in its prosecution. In that situation, one Cumi Bragg, who wished to marry Harry Campbell after the granting of the divorce, paid Hendricks a fee of $200.00 upon his representation that he would expedite the case. He advised her that a hearing in court was set for December 3, 1968. The husband, Harry Campbell, had filed pleadings in opposition to the divorce and the case then became a contested divorce case. The accused and the attorney for Harry Campbell reached an agreement concerning certain aspects of the case and the accused attempted to have the case heard in the Circuit Court of Logan County as a non-contested divorce case but the judge of that court refused to consider it as a non-contested case. In the meantime, the accused told the attorney for Harry Campbell, who had withdrawn his defense in the case, that a divorce had been authorized and that nothing remained except to prepare the final divorce decree and cause its entry. The accused also informed Cumi Bragg that she could go ahead with her plans to

marry Harry Campbell after sixty days from December 3, 1968 and led her to believe that a divorce had been granted. Cumi Bragg and Harry Campbell, believing that a divorce had been granted, were married on February 7, 1969. After learning that no divorce had been granted, Harry Campbell the husband of Mary Campbell, employed another attorney who obtained a divorce from Mary Campbell in the Circuit Court of Boone County. The conduct of the accused constituted fraud and deceit contrary to Section 2, Article VI of the By-laws.

Charge 7. Mildred Adams [Terry], an uneducated woman who had suffered the loss of her arm in an automobile accident in 1967, employed Hendricks to represent her in connection with the claim. He instituted an action in the Circuit Court of Boone County which was settled in September, 1967 for the sum of $15,000.00. At the home of the accused, he and Mrs. Adams agreed that he should retain $5,000.00 as his fee, that she should pay him $1,000.00 of the remaining $10,000.00 for a truck which he owned, and that the accused should retain $4,000.00 from which he would pay her medical expenses. He induced her to permit him to retain the remaining $5,000.00 as a payment for an interest in a corporation which he proposed to form to buy a tract of approximately 80 acres to be divided into burial plots. This caused her involvement in numerous complicated financial transactions of the accused and he has never made a complete accounting with his client for the money retained by him. His conduct constituted a violation of Canon 11, then in effect, in that he took advantage of the confidence reposed in him by his client, failed to account for the money collected for his client, and commingled money of his client with money owned and used by him.

Charge 13. In January, 1968, the accused was employed to represent Delmer Dean Jarrell in a pending divorce case for a fee of $300.00, which was paid. While the case was pending Jarrell's wife took the three infant children of the parties and fled to Florida. When the

divorce case was called for trial Mrs. Jarrell did not appear and Hendricks obtained a divorce for Jarrell and an order awarding him the custody of the three children. Jarrell also paid the accused $228.00 which he paid to the attorney for Mrs. Jarrell as his fee in the case. From time to time Jarrell paid Hendricks a total of $1,235.00, which included a second payment of $300.00. That payment of $300.00 was for the agreed purpose of employing an attorney in Florida to obtain possession of the children and it was agreed that upon failure to obtain possession of the children for Jarrell, Hendricks would refund the $300.00 to Jarrell and Hendricks signed a receipt to that effect. Hendricks contacted an attorney in Florida who represented Mrs. Jarrell and sought to obtain his services in connection with the possession of the children, but the attorney declined to undertake to represent or be associated with Hendricks in his efforts to obtain the children for his client. Hendricks did not disclose this situation to Jarrell and sent one of his secretaries to Florida to locate and get the children. The expense of this trip amounted to the greater portion of the payment of $300.00. When Jarrell learned of the failure of the accused to obtain possession of the children, he demanded return of the $300.00 which the accused refused to do. In defense or explanation of his refusal, he asserted that Jarrell owed him more than the $1,235.00 for services rendered Jarrell in other matters. The $300.00 payment constituted a trust for the purpose of paying fees to a Florida attorney in the event he was successful in obtaining possession of the children for Jarrell, and the refusal of the accused to return the $300.00 violated Canon 11, then in effect, and his failure to disclose the facts in connection with his inability to obtain the services of the Florida attorney constituted fraud and deceit contrary to Section 2, Article VI of the By-laws.

Charge 14. Hendricks was employed to represent Helen Marie Tackett in a divorce case pending in the Circuit Court of Lincoln County before Don E. Jarrell, Judge. The case was set for hearing as a non-contested case June

8, 1970 at 1:30 p.m. Hendricks and the attorney for Mr. Tackett negotiated a settlement of the case and his attorney did not appear or interpose any defense during the morning of the day the case was set for hearing. Hendricks informed the court that the attorneys had agreed on all matters that were subject to agreement including custody of the two year old child of the parties; that Mr. Tackett had withdrawn his answer and would make no protest at the hearing of the proceeding as a non-contested case, and that he was to have the usual visitation rights. The court then heard the case upon the evidence of Mrs. Tackett and a witness and granted the plaintiff a divorce and directed the preparation of a final divorce decree which should give the plaintiff custody of the infant child and provide the usual visitation rights for the father. This was understood by and was agreeable to the plaintiff. Hendricks prepared a divorce decree and, contrary to his statement to the court and to the directions of the court, provided in the order that the father should have the custody of the child every other weekend and for three weeks during the summer, which was without the knowledge or consent of the plaintiff. When she discovered the contents of the order she obtained the services of another attorney who obtained the entry of a proper decree in accordance with the decision of the court. The foregoing conduct of the accused violated Cannon 11, then in effect, and constituted fraud and deceit contrary to Section 2, Article VI of the By-laws.

Charges 6, 8, 15 and 17 accuse Hendricks of violation of Canon 11, or with fraud and deceit contrary to Section 2, Article VI, of the By-laws, or both. As it is unnecessary in the decision of this proceeding to detail the facts set forth in those charges such facts are omitted to avoid an unnecessary extension of the length of this opinion.

Charge 10. Hendricks was appointed by the Judge of the Circuit Court of Logan County to seek an appeal from this Court for a prisoner in the penitentiary who had been resentenced by the Circuit Court to confinement in the

penitentiary of this State for a term of not less than five years nor more than eighteen years. Hendricks examined the record in the case and sent the transcript to the prisoner for his examination and comment, and being of the opinion that there was no error on which to base an application for an appeal, did not seek an appeal and permitted the eight months' period to expire without taking any action and did not report his inaction to the Judge of the Circuit Court. His conduct violated Canon 4, then in effect, which required a lawyer assigned as counsel for an indigent defendant to exert his best efforts in behalf of his client. Such conduct of Hendricks, however, though inexcusable in this instance, is not of itself and in the attendant circumstances, sufficient to warrant disbarment or annulment of his license to practice law but instead is such as renders him subject to reprimand or suspension of his license for a reasonable period of time.

Charge 11. Hendricks represented a great number of compensation claims before the Workmen's Compensation Commissioner of West Virginia and in many instances failed, without sufficient excuse, to appear at the time fixed for hearing at which, at times, the claimant appeared without his attorney and at other times neither Hendricks nor the claimant appeared, with the frequent result that the claim was dismissed for failure to prosecute. In some instances Hendricks desired the dismissal of the claim to exhaust the state remedy of his client in order to file a claim for greater compensation benefits for black lung disability, but in other instances there was no such reason for the dismissal of the state compensation claim. This conduct of Hendricks in the attendant circumstances, though not professionally permissible, is not sufficient to warrant disbarment or annulment of his license to practice law, but instead should subject him to reprimand or suspension of his license for a reasonable period of time.

Charge 12. Hendricks directed and participated in the formation of a non-stock, non-profit corporation known

as The Association of Disabled Miners and Widows, Inc., and received a portion of the $1.00 dues from each of several hundred members in a substantial amount for a certain period of time. The headquarters of the organization were located at the office of Hendricks and he attended and participated in the meetings of the association and its several local county chapters and frequently addressed such meetings. He also represented various members who had claims for Workmen's Compensation, Black Lung and Social Security benefits and on occasions certain members recommended the defendant as an attorney and brought members to him who employed him as their attorney. He is charged with soliciting legal business in violation of Canon 27, then in effect, which prohibited the solicitation of professional employment by circulars, advertisements, through touters or through personal communications or interviews not warranted by personal relations, and with employing agents or runners to seek personal injury claimants and other claimants as his clients in violation of Canon 28, then in effect, which prohibited a lawyer from volunteering advice to bring a law suit except in rare occasions where ties of blood or relationship or trust make it his duty to do so. The evidence, however, is not sufficient to sustain this charge against Hendricks and it is dismissed for lack of adequate proof.

All the other fourteen charges are established by full, clear and prependering evidence which is the measure of proof required to disbar an attorney or to suspend or annul his license to practice law. *The Committee on Legal Ethics of the West Virginia State Bar* v. *Pietranton,* 143 W.Va. 11, 99 S.E.2d 15; *In re: Marcum,* 135 W.Va. 126, 62 S.E.2d 705; *In re: Damron,* 131 W.Va. 66, 45 S.E.2d 741; *State* v. *Smith,* 84 W.Va. 59, 99 S.E. 332; *State* v. *Stiles,* 48 W.Va. 425, 37 S.E. 620; *State* v. *Shumate,* 48 W.Va. 359, 37 S.E. 618. In the *Pietranton* case this Court said in the syllabus that "In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar, for the purpose of having annulled

the license of an attorney to practice law, the burden is on the committee to prove, by full, preponderating and clear evidence, the charge contained in the complaint filed on behalf of the committee." In *In re: Damron,* Point 2 of the syllabus contains this language: "To suspend or annul the license of an attorney in a proceeding for that purpose under 30-2-7, Code, 1931, the misconduct which justifies the suspension or the annulment of his license must be established by full, clear and preponderant evidence."

The misconduct alleged in charges 1, 2, 3, 4, 5, 7, 13 and 14, stated in some detail, and in charges 6, 8, 15 and 17, mentioned but not stated in detail, in this opinion, each of which charges sets forth grave professional misconduct by the attorney charged with such misconduct, and all of which charges are established by sufficient proof, justifies the annulment of his license to practice law in this State and such license is annulled in this proceeding.

In holding that the conduct of the accused as set forth in the twelve charges is sufficient to justify the annulment of his license to practice law in this State and in holding that the conduct of the accused as set forth in charges 10 and 11 does not constitute professional misconduct which warrants the disbarment or the annulment of his license but instead is such as justifies reprimand or suspension of his license for a reasonable period of time, this Court does not formulate or establish any inflexible guidelines or rigid standards with respect to disciplinary action against an attorney at law. On the contrary, it should be clearly understood that in disciplinary proceedings for disbarment or suspending or annulling the license of an attorney at law the action taken must depend upon the facts and circumstances in each particular case and it is not intended by the decision in this proceeding to establish any uniform or particular type of disciplinary action for any given case.

Guidelines and standards of professional conduct are set forth in the Code of Professional Responsibility which,

as amended, was adopted by the American Bar Association on February 24, 1970. That Code was promulgated and adopted by this Court effective on and after July 1, 1970, and it supersedes and replaces the Code of Professional Ethics promulgated by this Court on March 28, 1947.

The procedure upon the complaint against an attorney at law is set forth in Article VI, Part C, Section 20 of the By-laws of the West Virginia State Bar and that section, in part, provides that: "Upon final submission of the case, the court shall consider the same and shall, by order entered of record, dismiss the complaint, administer a public reprimand to the attorney, suspend the attorney's license to practice law in this State for such period of time and upon such terms and conditions as may be adjudged by the court, annul the attorney's license to practice law in this State, or take such other action as the court in its judgment may consider proper, which order may include such provisions for reimbursement of the actual and necessary expenses incurred by the committee in connection with said case as the court shall deem just." Pursuant to this provision the Committee is entitled to reimbursement for the actual and necessary expenses incurred by it in connection with this proceeding and the order to be entered will provide for and require such reimbursement.

For the reasons stated in this opinion, the license of P. W. Hendricks to practice law in this State is annulled.

*License annulled.*